In re HALE.

(Circuit Court, S. D. New York.    June 8, 1905.)

1. GRAND JURY—POWERS—WITNESSES—REFUSAL TO TESTIFY.

Where, after a witness had refused to testify before a grand jury considering supposed infractions of the anti-trust law, the grand jury made a presentment to the court charging the witness with contempt, and the court, after hearing, ordered the witness to answer the questions, and to forthwith produce the papers required, the court's action was equivalent to an express instruction to the grand jury to investigate the matter referred to in the presentment, and hence the fact that the grand jury had been previously acting beyond its power was harmless.

2. WITNESSES—PRIVILEGE—ANTI-TRUST ACT—INQUISITIONS.

An inquisition before a grand jury to determine the existence of supposed violations of the anti-trust act was a "proceeding" within Act Cong. Feb. 19, 1903, c. 708, 32 Stat. 848 [U. S. Comp. St. Supp. 1903, p. 365], providing that no person shall be prosecuted or subjected to any penalty for or on account of any transaction, matter, or thing concerning which he may testify or produce evidence in any "proceeding" under several statutes mentioned, including such anti-trust act.

3. UNREASONABLE SEARCHES—RIGHTS OF AGENT—SUBPŒNA DUCES TECUM.

A subpœna duces tecum commanding the secretary and treasurer of a corporation supposed to have violated the anti-trust act to testify and give evidence before the grand jury, and to bring with him and produce numerous agreements, letters, telegrams, reports, and other writings, described generically, in effect including all the correspondence and documents of his corporation originating since the date of its organization, to which 19 other named corporations or persons were parties, for the purpose of enabling the district attorney to establish a violation of such act on the part of the witness' principal, constituted an unreasonable search and seizure of papers, prohibited by Const. U. S. Amend. 4.

4. HABEAS CORPUS—CIRCUIT COURTS—JUDGES—CO-ORDINATE JURISDICTION.

Where a subpœna duces tecum was directed to be issued by a circuit judge, and the witness was committed for contempt for failure to obey the same, he would not be discharged on habeas corpus by another judge of the same court, though the latter was of the opinion that the subpœna authorized an unconstitutional search and seizure of private papers.

Henry W. Taft, for complainant.
Elihu Root and De Lancey Nicoll, for defendant.

WALLACE, Circuit Judge.    This is a proceeding in habeas corpus to test the legality of the imprisonment of the petitioner, pursuant to an order of the Circuit Court, adjudging him guilty of contempt in refusing to produce certain documents and writings and answer certain questions as a witness before the grand jury impaneled in that court.    The petitioner was the secretary and treasurer, and also a director, of McAndrews & Forbes Company, a New Jersey corporation, and had been served with a subpœna duces tecum issued out of that court commanding him to testify and give evidence before the grand jury upon the part of the United States of America "in a certain action now pending and undetermined" in that court between the United States of America and the American Tobacco Company and the McAndrews & Forbes

Company, and to bring with him and produce numerous agreements, letters, telegrams, reports, and other writings, all of which were described generically, and may for the present purposes be described as including all the correspondence and documents of his corporation originating since the date of its organization, to which 19 other named corporations or persons were parties. He appeared before the grand jury pursuant to the subpœna, and was then asked several questions bearing upon the general inquiry whether there was any agreement, arrangement, or understanding between his corporation and the American Tobacco Company in relation to the trade in licorice affecting the business between several states of the United States. He declined to produce the papers or to answer the questions, stating to the grand jury as a reason for so doing that he had been advised by counsel that he was under no legal obligation to produce the writings, and that the production of the papers or the answers to the questions would tend to criminate him. Thereupon he was informed by the United States attorney that the proceeding was one under the act of Congress to protect trade and commerce against unlawful restraints and monopolies, and it was not proposed to prosecute him or subject him to any penalty or forfeiture on account of anything to which he should testify, or as to which he should produce documentary or other evidence, and that he (the district attorney) offered and assured to him immunity and exemption from any such testimony. The petitioner again declined to answer, for the reasons previously stated. Subsequently the grand jury made a presentment to the court charging the petitioner with contempt because of his refusal to produce the writings and give the testimony required, and setting forth fully the facts relating thereto. When this presentment was submitted to the court, the petitioner being present, the court made an order directing him to answer the questions as propounded by the grand jury, and to forthwith produce the papers. Upon his refusal to comply, further proceedings were taken, which resulted in an order by the court adjudging him in contempt, and committing him to the custody of the marshal until he should comply with its previous order.

It is insisted by the petitioner that his imprisonment and restraint are without lawful authority for reasons which may be summarized as follows: (1) That the grand jury could only investigate specific charges against particular persons, and, as there was not any proceeding of that nature before them, and no cause or action of any kind whatever pending in the court, they were not in the exercise of proper authority in prosecuting the investigation when petitioner was before them, and consequently he could not be lawfully required to testify or give evidence; (2) that petitioner was within the protection of the fifth amendment of the Constitution in refusing to testify or produce incriminating evidence against himself; and (3) that the order of the court directing him to produce the papers contravened the fourth amendment of the Constitution, and in fact deprived him of his right to be secure against unreasonable search and seizure of his papers, and was equivalent to a

warrant not issued upon probable cause or particularly describing the things to be seized.

It is manifest from the facts recited in the presentment made by the grand jury that the investigation which they were pursuing was not based upon any specific charge which had been formulated and laid before them by the United States attorney, and that it was not founded upon their own knowledge, or upon information derived from any source that a specific offense had been committed by either of the two corporations named in the subpoena. It appears to have been one which they were pursuing, with the assistance of the United States attorney, directed to the discovery of some infraction by one or both of these corporations of the law of Congress of July 2, 1890, "to protect trade and commerce against unlawful restraints and monopolies," known as the "Anti-Trust Law" (Act July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200]). Consequently the first contention for the petitioner presents the question whether it is within the competency of the grand jury to institute and pursue such an investigation in the exercise of its inquisitorial power.

The authority and functions of a grand jury in the courts of the United States in investigating criminal offenses are not prescribed by statute, but are such as inhere in that body by the general sanction of the common-law courts. That a grand jury is not confined to the investigation of an alleged offense to which their attention has been called by the court, or which has been laid before them in an indictment, or an information by the prosecuting attorney of the court, or which is within the personal knowledge of some of the members, is the generally accepted opinion of the courts of this country, unless in some of the states where there may be statutory restrictions to the contrary. As said by Mr. Justice Brewer in Frisbie v. The United States, 157 U. S. 160, 15 Sup. Ct. 586, 39 L. Ed. 657:

"In this country the common practice is for the grand jury to investigate any alleged crime, no matter how or by whom suggested to them, and, after determining that the evidence is sufficient to justify putting the party suspected to trial, to direct the preparation of the formal charge or indictment."

That they may investigate into offenses which may come to their knowledge, other than those to which their attention has been called by the court, or which have been submitted to their consideration by the district attorney, is shown by the observations of Mr. Justice Field in a carefully considered charge to the grand jury in the United States Circuit Court for the District of California. 2 Sawy. 667, Fed. Cas. No. 18,255. That a grand jury has certain inquisitorial powers—and by this is meant the power of instituting an investigation to discover whether a particular crime has been committed—is also a proposition which has been frequently affirmed by the courts of this country; but as to the extent and limitation of this power there is pronounced divergence of opinion. It will suffice to refer to a few of the many citations which counsel have with great industry collated.

In Blaney v. The State of Maryland, 74 Md. 153, 21 Atl. 547, the court said:

"However restricted the functions of grand juries may be elsewhere, we hold that in this state they have plenary inquisitorial powers, and may lawfully press, and upon their own motion originate, charges against offenders, though no preliminary proceeding has been had before a magistrate, and though neither the court nor the state's attorney has laid the matter before them. * * * Though far-reaching and seemingly arbitrary, this power is at all times subordinate to the law, and experience has taught that it is one of the best means to preserve the good order of the commonwealth and to bring the guilty to punishment."

In Re Lester, 77 Ga. 143, the Supreme Court, after stating in its opinion that it was undeniable that the powers of the grand jury are to a certain extent inquisitorial, but are to be exercised within well-defined limits, said:

"Anything they can find out upon inquiry and observation is legitimate and praiseworthy, but they have no authority to force private persons or the officers of other courts to disclose to them who have violated the public laws, and the names of persons by whom such infractions can be established; in short, to make any man the spy upon the conduct of his neighbors and associates, and compel him to violate the confidence implied in holding social intercourse with his fellows by forcing him to become a public informer."

Such an exercise of power, the court said, would be in derogation of "rights regarded as sacred and paramount in the intercourse between man and man; and these rights have been carefully guarded, not only by the spirit of our law, but by its express enactment."

In the United States Circuit Court for the District of Tennessee (reported in Wharton on Criminal Pleading, p. 224) Mr. Justice Catron compelled witnesses to answer who had been summoned by the grand jury, when it did not appear that there was any specific charge made against any particular person, and when the questions were whether the witnesses knew of any person or persons in the city of Nashville who had begun, or set on foot, or provided means for a military expedition to the Island of Cuba. He said:

"As all these questions tend fairly and directly to establish some of the offenses made indictable by the act of 1818, and are pertinent to the charge delivered to the grand jury, they may be properly propounded, unless the answers would tend to establish that the witness was himself guilty."

In United States v. Kilpatrick (D. C.) 16 Fed. 765, the court, after proving the practice of the state courts in North Carolina, said:

"Grand juries cannot make inquisitions into the general conduct or private business of their fellow citizens, and hunt up offenses by sending for witnesses to investigate vague accusations founded upon suspicions and indefinite rumors."

He adds:

"The rights of society, as well as the nature of our free institutions, forbids such a dangerous mode of inquisition."

In Thompson & Merriam on Juries, § 615, it is said, referring to authorities cited:

"These expressions of opinion bristle with evidence of the inquisitorial power of the grand jury to inquire of their own motion into offenses of every character punishable by the court, of which it is a component part."

The subject is summed up in volume 17, Am. & Eng. Enc. of Law (2d Ed.) p. 1279, as follows:

"Although it has been sometimes asserted that at common law the grand jury was charged with inquisitorial duties, and was empowered to institute inquiries and investigations into criminal offenses, according to the weight of authority the power of the grand jury to originate criminal prosecutions otherwise than by a presentment based upon the personal knowledge or observation of the members of that body is ordinarily limited to cases in which individuals have been charged with specific crimes before a magistrate, in which cases the accused has a responsible prosecutor upon the record, who may, if he swear falsely, be indicted for perjury, or to cases which are called to its attention by the court or the prosecuting attorney; and it has no power of its own motion to institute a prosecution by summoning and examining witnesses for the purpose of obtaining information upon which to base a presentment of a supposed offender."

The result of the authorities seems to be fairly summarized in the last citation.

The question whether an improper exercise of the inquisitorial power subverts the jurisdiction of the court, or is simply such an irregularity as to enable the accused or a witness to invoke the intervention of the court, or as may vitiate an indictment, has never been decided. Were it not for the implication arising from the treatment of the subject in Counselman v. Hitchcock, 142 U. S. 547, 12 Sup. Ct. 195, 35 L. Ed. 1110, it would seem quite clear that it could not affect the jurisdiction of the court. The grand jury is a part of the court in the exercise of criminal jurisdiction, and their proceedings are always subject to the control of the court. The court can at any time direct the grand jury to consider a particular accusation, or to investigate a supposed violation of the criminal law; and whether it does this by direct instructions or by directing the prosecuting officer to present the matter for the consideration of the grand jury is of no consequence. If, in the absence of such instructions, the grand jury proceeds of its own motion, and is guilty of any abuse of its powers, the court can at any time intervene, and correct or suppress the proceedings. If the conduct of the grand jury is called to its attention, and the court approves or disapproves, whether its judgment may be correct or wrong, it is in the exercise of its undoubted jurisdiction; and, though it is erroneous, it is not void or illegal, and cannot be reviewed by habeas corpus. Of course, this is not true in cases where the court transcends its authority. In the Counselman Case, which was a habeas corpus case, the court adverted to the contention that the jury in the particular case had not been "investigating specific charges against particular persons," but said that it was not necessary to intimate any opinion as to the validity of the contention, and placed its decision upon another ground. The circumstance that the point was adverted to is hardly enough to suggest that the court considered it to be a valid one.

In the present case it does not appear that the investigation was initiated sua sponte by the grand jury, and it may be inferred from the participation of the United States attorney in the proceeding that it originated in his formal presentation of the charge to them. The subpœna duces tecum was the process of the court. As it commanded the witnesses to appear before the grand jury, it is manifest that the recital about the pending "action" could only have referred to a proceeding between the United States and the two corporations of the only kind which a grand jury can entertain, viz., a preliminary investigation to ascertain whether there was sufficient cause for an indictment. When, after the presentment of the alleged contumacy of the witness by the grand jury to the court, he was ordered by the court to answer questions and produce the documents, the action of the court was equivalent to an express instruction to the grand jury to investigate the proceedings mentioned in the presentment. While the investigation was not directed to a specific offense, it was directed to the inquiry whether one of the laws of the United States—the so-called Anti-Trust Law—had been violated by either or both of the two corporations mentioned. Without this intervention by the court the investigation would have been one upon the border line between the legitimate exercise and the abuse of the inquisitorial power of the grand jury, but not one which can be safely held to have been an ultra judicial proceeding. After the intervention of the court the original abuse of power, if there was any, became innocuous.

The contention for the petitioner that the order of the court violates the constitutional prohibition against compelling a person to give evidence against himself in a criminal case would be clearly sound were it not for the effect of the immunity act of Congress of February 19, 1903, c. 708, 32 Stat. 848 [U. S. Comp. St. Supp. 1903, p. 365]. In view of his official relations with the corporation, it fairly may be assumed that the petitioner had participated personally in some of the acts or transactions which were the alleged offenses of the corporation, and was therefore originally responsible himself. It is not for this court to question the soundness of the judgment in Brown v. Walker, 161 U. S. 591, 16 Sup. Ct. 644, 40 L. Ed. 819, or to weigh the value of the dissenting opinions. That judgment is authoritative that such an exemption from liability to prosecution or penalty as was secured to the witness by the immunity act of February 19, 1903, if it extends to testimony given or compelled before a grand jury, deflects the application of the fifth amendment to the Constitution so that the prohibition against compelling a person to be a witness against himself in a criminal case does not protect him. The petitioner's counsel do not argue otherwise, and their argument is that the immunity given by this act does not extend to testimony given by a witness before a grand jury. The provision is that no person shall be prosecuted or subjected to any penalty for or on account of any transaction, matter, or thing concerning which he may testify or produce evidence, documentary or otherwise, "in any proceeding, suit, or prosecution"

under the several statutes mentioned, including the anti-trust act. The argument that a proceeding before a grand jury is not such a proceeding as is meant by the provision has been ingeniously presented, and is not without plausibility. But the word "proceeding" is a broad term, and was apparently intended to include some form of judicial inquiry other than a "suit or prosecution." In one sense it is true a criminal proceeding is not instituted against an accused person until a formal charge is made against him by indictment or information, or a complaint before a magistrate; and proceedings before a grand jury are not, in that sense, a criminal proceeding against an accused. Post v. United States, 161 U. S. 583, 16 Sup. Ct. 611, 40 L. Ed. 816. But in another sense any initial step before a judicial tribunal preliminary to the commencement of a civil suit or a criminal prosecution is a proceeding. As used in this statute, inasmuch as testimony given in a suit or prosecution embraces that given not only at the trial, but upon all occasions incident to the controversy, the term "proceeding," if limited to some step in the progress of a civil suit or a criminal prosecution which has been previously instituted, is mere tautology. A rational construction seems to require it to include any preliminary step which is incident to the institution of a civil suit or a criminal prosecution.

The contention that the order requiring the petitioner to produce papers called for by the subpœna duces tecum was made in violation of the petitioner's rights under the fifth amendment to the Constitution, raises the question whether such a general inquisition into his private papers as is permitted by the terms of the subpœna was not such an abuse of judicial process as to amount to an unreasonable search and seizure. As Judge Cooley says in his work on Constitutional Limitations:

"Near in importance to exemptions from an arbitrary control of the person is that maxim of the common law which secures to the citizen immunity in his home against the prying eyes of the government, and protection in person, property, and papers against even the process of the law, except in a few specified cases."

In Boyd v. U. S., 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746, it was decided that the law of Congress which authorized a court of the United States in revenue cases on motion of the government attorney to require a defendant to produce in court his private books, invoices, and papers, and permit the attorney, under the direction of the court, to make examination of the same, and which provided that, if the defendant refused to produce the same, the allegations of the attorney as to their contents specified in his written motion should be taken as confessed, was unconstitutional and void, as being repugnant to the fourth and fifth amendments to the Constitution. The court said:

"It is our opinion, therefore, that a compulsory production of a man's private papers, to establish a criminal charge against him, or to forfeit his property, is within the scope of the fourth amendment to the Constitution, in all cases in which a search or seizure would be, because it is a material ingredient and affects the sole object and purpose of search and seizure."

And the court concluded:

"We think that the notice to produce the invoice in this case, the order by virtue of which it was issued, and the law which authorized the order, were unconstitutional and void, and that the inspection of the district attorney of said invoice, when produced in obedience to said notice, and its admission in evidence by the court, were erroneous and unconstitutional proceedings."

It will be observed that the statute in that case did not deprive the party of the custody of the books and papers which he was required to produce, and authorized only such an inspection of them as the court might direct. This judgment concludes an inquiry by this court as to the validity of two propositions, and it settles, first, that a subpœna or an order of the court may be the equivalent of a search and seizure within the constitutional provision; and, second, that any search or seizure for the purpose of obtaining incriminating evidence against the party, is an unreasonable one within the meaning of the provision. The judgment would have controlled this case, and would have entitled the petitioner to be discharged, if the evidence sought to be procured could have been used to incriminate the petitioner. Is a search and seizure any the less unreasonable when it compels the official custodian of all the papers of his principal, whose duty it is to keep their privacy inviolable, to produce them in order to incriminate his principal? It may be conceded that his duty to the state and courts is paramount; but is this true when the evidence is not to be used against a principal who is under any criminal accusation, or against whom any civil suit is pending, and is only to be used to discover if possibly any ground of accusation can be found against him?

If the petitioner had been ordered to produce a single document or numerous documents in his possession, which were adequately described to enable him to find them, for use as evidence in a pending action, civil or criminal, it seems plain that the order would have been unobjectionable, and such as the courts are daily making. Such was the case of Interstate Commerce Commission v. Baird, 194 U. S. 25, 24 Sup. Ct. 563, 48 L. Ed. 860, where the observation was made by the court upon which the government relies.

The petitioner was required to produce a numerous array of documents and papers for the purpose of ascertaining whether they contained anything which would tend to establish the commission of an offense by either of the two corporations; and it is apparent that the object was to enable the government, by inspecting this mass of the private papers and documents of the petitioner's corporation, to find something which might induce the grand jury to find an indictment against his corporation. It is this which gives to the proceeding its color of oppression and the attributes of an unreasonable search and seizure.

The legality of search warrants has been sanctioned on the ground of public necessity, because without them felons and other malefactors would escape detection. But a search warrant for the papers of a suspected party, to be used as evidence against him, was illegal at common law. Archbold, Criminal Law (7th Ed.) 141.

Because of the obnoxious character of the process, very great particularity is required in designating the articles to be searched for before the officers of the law are permitted to invade the premises where the articles sought are supposed to be. A designation of goods to be searched for as "goods, wares, and merchandise," without more particular description, has been regarded as insufficient, even in the case of goods supposed to be smuggled, where there is usually greater difficulty in giving description, and consequently more latitude should be permitted, than in the case of property stolen. Sandford v. Nichols, 13 Mass. 286, 7 Am. Dec. 151. Lord Camden, speaking of a warrant not specifying the particular papers, but authorizing the seizure of all the papers of the person named in it, described it as "an execution upon all the party's papers," and said:

"To enter a man's house by virtue of a nameless warrant, in order to produce evidence, is worse than the Spanish inquisition—a law under which no Englishman would care to live an hour." Entinck v. Carrington, 19 State Trials, 1029.

Any process which is issued to perform the office of a search warrant should conform in some remote degree, at least, in certainty and specific description, to the requirements of a valid search warrant. The subpœna issued in this case may possibly meet these requirements, but it is not too much to say that it resembles more nearly a general warrant to search all the private papers of a witness. It falls but little short of being in substance and effect a roving commission, devised by the government to compel a witness to bring before the grand jury a general mass of the private papers of his principal, in order that the prosecuting officer might discover whether at any time during its corporate life the principal had been a party to any act which could afford the basis of a criminal accusation. This was a wanton assault upon the right of privacy, and in my judgment the process, in view of the circumstances under which and the purposes for which it was issued, authorized an unreasonable search and seizure of papers within the spirit and meaning of the fourth amendment.

The conclusions thus indicated would ordinarily lead to an order for the petitioner's discharge, but the order compelling him to produce the papers alluded to in the subpœna was made by one of the judges of this court, and although it was not made under circumstances which afforded an opportunity for deliberate consideration, the manifest impropriety of reversing it indirectly in the same court, held by a different judge, is so great that it ought not to be done if the only result will be to shift the burden of preparing a record for a review by a higher tribunal from the one party to the other. Whether the present decision is in favor of the petitioner or against him, it is understood that it will be taken for review to the Supreme Court, and pending that review the petitioner will not be confined.

Under these circumstances an order will be entered refusing the discharge of the petitioner.