Ex parte CHAPMAN.

(Circuit Court, D. Idaho. April 26, 1907.)

No. 446.

WITNESSES—PRIVILEGE—BOOKS AND PAPERS—PRODUCTION—BOOKS OF CORPORATION.

Petitioner was a stockholder and resident manager of a foreign corporation doing business in Idaho, and conducted on the corporation's behalf such transactions as it engaged in with reference to the acquisition of timber lands within such state, and the corporation's books, records, and and papers, showing such transactions in petitioner's possession, were made by petitioner or under his direction. *Held* that, if such records disclosed the commission of a criminal offense by the corporation in the acquisition of such timber lands, they also showed petitioner's complicity therein, and hence he was properly entitled to refuse to produce such books and records before the grand jury, for the purpose of enabling such body to determine whether an offense had been committed, because the production of such books would tend to incriminate him.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, §§ 1038–1040.]

## Habeas Corpus.

The petition of L. G. Chapman for a writ of habeas corpus, alleging that he is unlawfully imprisoned and restrained of his liberty by the United States marshal for the district of Idaho, in the county jail of Ada county, Idaho, having been presented, and an order thereupon having been made and served upon the marshal requiring him to show cause why the writ should not issue as prayed for, there appear from the petition and the return of the marshal to the order to show cause the following facts and proceedings: On April 5, 1907, the petitioner was served with a subpœna duces tecum issued out of the District Court of the United States for the district of Idaho, commanding him to appear forthwith before the grand jury, then and there impaneled in said court, to testify and to produce before the grand jury the following: All books of account of every name, nature, and description of the Barber Lumber Company in Idaho; and all stock books or other records showing the owners, past and present, of the stock of the said Barber Lumber Company, and all transfers of the stock thereof; and all books, records, papers, and correspondence relating to the acquiring and perfecting of title to timber and other lands in the state of Idaho; and all records, accounts, and correspondence with every officer, employé, representative, agent, or attorney engaged in or employed for the purpose of acquiring title or perfecting title to timber or other lands in the state of Idaho for the said Barber Lumber Company, and all accounts with the payment or payments made to any and all of said officers, employés, representatives, agents, or attorneys; and any and all books, records, and papers showing the payment made on account of the purchase of any and all timber or other lands in the state of Idaho and to whom such payment or payments were made, and the manner of such payment; and any and all contracts and agreements made with any person, association, agent, officer, representative, employé, or attorney in reference to the acquiring of timber and other lands in the state of Idaho; and any and all cash books, ledger accounts, bank books, notes, canceled checks, and the stubs of any and all check books, showing all payments to any person, firm, or corporation on account of acquiring and perfecting title to timber and other lands in the state of Idaho by said Barber Lumber Company; and all correspondence had by you, as manager or otherwise, with any officer, attorney, employé, representative or agent of said company, in reference to the acquiring and perfecting of title to any timber or other lands in the state of Idaho; also the articles of incorporation of said Barber Lumber Company and the minutes and records of the meetings of the stockholders and directors of said Barber Lumber Company; and all maps, plats, and tract

or abstract books, showing the lands and timber on lands, owned by, claimed by, or held in trust for said Barber Lumber Company. The above to include the originals, duplicates, and all copies, letter-press, carbon, or otherwise, of any and all of the aforesaid books, records, documents, correspondence, and papers, from the organization of the said Barber Lumber Company down to and including the year 1906, now in your possession or under your control, or in the possession or under the control of any agent, employé, representative, attorney, or officer of said Barber Lumber Company in the state of Idaho.

The subpœna was addressed to John Doe, the Barber Lumber Company, a corporation, and L. G. Chapman, manager, Barber Lumber Company. On April 6, 1907, the grand jury made a report to the court that on that day, in pursuance to the subpœna, the petitioner appeared before the grand jury and under oath admitted that he had in his possession and custody and under his control certain of the books, records, papers, documents, and correspondence as called for in said subpœna, but that he then and there declined and refused to produce the same in obedience to said subpœna. Upon that report, the court on the same day ordered that the petitioner appear and produce said books, records, papers, documents, and correspondence as required by the subpœna, or show cause why he should not be adjudged in contempt of the court.

On the hearing so ordered, it was stated by the district attorney that the matter before the grand jury was the investigation of the alleged illegal procurement of timber lands of the United States now owned by the Barber Lumber Company, and to discover whether the books might not disclose that the Barber Lumber Company or some one else had acquired land illegally, and the district attorney said: "If they have any correspondence with any employé or agent or attorney or any one else that has appeared in connection with this acquiring of timber lands, we also want that." On the same day the court made the following order:

"It is hereby ordered that the said L. G. Chapman shall produce before the said grand jury all books, records, documents, papers, and correspondence relating directly or indirectly to the acquiring and perfecting of title to timber lands in the state of Idaho by the Barber Lumber Company; and all records, accounts, and correspondence with every officer, employé, representative, agent, or attorney, engaged in or employed for the purpose of acquiring title or perfecting title to timber lands in the state of Idaho for the said Barber Lumber Company; and all accounts with and the payment or payments made to any and all of said officers, employés, representatives, agents, or attorneys; and any and all books, records, and papers showing the payments made on account of the purchase of any and all timber lands in the state of Idaho and to whom such payment or payments were made and the manner of such payments; and any and all cash books, ledger accounts, bank books, notes, canceled checks, and the stubs of any and all check books showing any and all payments to any person, firm, or corporation on account of acquiring or perfecting title to timber lands in the state of Idaho by the said Barber Lumber Company; and all correspondence had by you as manager or otherwise with any officer, attorney, employé, representative, or agent of said company with reference to the acquiring and perfecting of title to any timber lands in the state of Idaho; and all maps, plats, tract, or abstract books, showing the land and timber on lands owned by, claimed by, or held in trust by said Barber Lumber Company; and shall produce all books, correspondence, and documents that have any connection, whether directly or indirectly, with the acquiring by the said Barber Lumber Company of timber lands in the State of Idaho. The object of the foregoing order being to produce all such evidence before the grand jury as pertains to the acquirement of timber lands by the Barber Lumber Company in the state of Idaho and showing all transactions in relation thereto."

On April 8th, the grand jury came into court and reported that upon the appearance of the petitioner before that body, with certain books, papers, and correspondence in compliance with the subpœna, he declined to allow the members of the grand jury or the district attorney to inspect the same for the purpose of determining for themselves as to what the books contained that was pertinent and material to the investigation. Counsel for the petitioner then,

in open court, said that the way the petitioner could tell whether he was obeying the order was to ascertain for himself, with the advice of his attorney, what was pertinent to the investigation, and said: "We will submit it to your honor very willingly, and let your honor determine what of those things pertain to the acquisition of timber lands." The court declined to do this, saying: "It is out of the question for the court to assume to act as the grand jury and to examine these accounts as counsel has suggested." The court said further: "It is not for the petitioner to assume to say what applies and what does not, but for the grand jury to say what applies and what does not apply;" and added: · "The order now is that the grand jury shall be entitled to all the books and correspondence, and every item as named in that order there, and, without the authority to the manager of this company to determine what is pertinent, and what is not pertinent, that they shall have before the grand jury, and they shall determine whether it is pertinent to this issue or not. And if this order is not carried out in good faith, this manager will go to the county jail." And the court addressed the grand jury as follows: "Now, gentlemen, as fast as these books and papers come before you, if they do come before you, whenever you find any account or any paper that does not pertain to the investigation that you are now pursuing, you will lay it aside at once, and make no further investigation of it, but, whenever you find anything that in your belief pertains to the investigation that you are now following, that you will investigate carefully, and will not leave it to Mr. Chapman to determine whether it is pertinent or not. You are the judges to determine, and not Mr. Chapman."

On April 9th, the grand jury made a report to the court that the petitioner further appeared before the grand jury on that day, and, upon being interrogated, said he would refuse, and did refuse, to produce any of the books, papers, correspondence, or other documents of said Barber Lumber Company, and based such refusal upon his written answer, which is as follows:

"To the Foreman and Gentlemen of the Grand Jury:

"I shall have to decline to produce the documents called for in the subpœna served upon me and in the orders of the court in relation thereto:

"First. I am the general manager of the Barber Lumber Company, and also a stockholder in said corporation. I have been such general manager ever since said corporation commenced business in Idaho, and have represented the corporation in this state. As such general manager, I have knowledge of its dealings in relation to procuring the government timber lands in this state; and also of all its business affairs within the state of Idaho. I have had control and custody of all the books, papers and records called for in the subpœna served upon me and referred to in the orders of the court in reference thereto.

"Second. For the reason that the subpœna and order of the court contravene the fourth amendment of the Constitution of the United States; that said subpœna and order of the court directing the production of all the books, records and files in the office of the Barber Lumber Company is too general in its character, and is unreasonable and against the law.

"Third. That the subpœna served upon me, and the order of the court in relation thereto, gives me no information whatever as to the person or matters under investigation by the said grand jury, and therefore no intimation as to what documents would be material and should be produced by me before said grand jury.

"Fourth. That the district attorney, Mr. Ruick, stated in open court that there was evidence before the grand jury touching the acquisition of lands by the Barber Lumber Company of which the witness, Chapman, might be and very likely was ignorant, and therefore he could not be permitted to be the judge as to whether or not the evidence which he offered was pertinent.

"Fifth. That the records, documents and papers called for in said subpœna, and orders of the court made in reference thereto, contain, to a large extent, all the private business transactions of said Barber Lumber Company, and private and confidential correspondence which could in no manner be of any value or aid to this grand jury in any of their deliberations, and the production and exposure of said books, records and documents to said district attorney, his associates, and the grand jury, would invade the private busi-

ness affairs and private correspondence of myself and the Barber Lumber Company, and is therefore unreasonable and void. By the order of this court I am required to leave these records, documents and evidence in the possession of the grand jury and district attorney, in order that he may select, after an investigation of all these private matters, such parts thereof as he may deem material; and that said books, records and documents are to be taken from my possession and given into the possession of said district attorney for said purpose.

"Sixth. I shall also have to decline to produce or exhibit to the grand jury for their consideration, the records, correspondence and documents called for in said subpoena served upon me in this matter, and in the orders of the court in relation thereto, on the ground that the production of said records, correspondence and other documents might tend to incriminate me, and that the subpoena to produce the same, and the order of the court in relation thereto, and the production thereof would be contrary to the fifth amendment to the Constitution of the United States, which declares: 'No person shall be compelled, in any criminal case, to be a witness against himself.'

"The above and foregoing objections are made by me in good faith and without any disrespect to the court or grand jury, and without any intention, upon my part, to obstruct or in any manner interfere with the due administration of justice, but solely to protect my legal rights in the premises.

                                                          "L. G. Chapman."

Thereupon, on the same day, the court ordered that the petitioner be adjudged guilty of contempt of the court in refusing to comply with its order; that he be punished therefor; and that he be remanded to the custody of the United States marshal for the district of Idaho and be by him confined in the county jail of Ada county until he complied with the aforesaid order, or until some one on his behalf produce said documents and papers for the inspection of said grand jury, or until the further order of the court.

Albert A. Fraser and Lyttleton Price, for petitioner.
W. C. Bristol, for the United States.

GILBERT, Circuit Judge (after stating the facts). While the proceedings began with a subpœna duces tecum, directing the petitioner to bring before the grand jury the books and records of the Barber Lumber Company, they finally resulted in an ultimatum from the court ordering him to produce the books and papers and submit them to the inspection of the grand jury, and giving the grand jury the authority, which was expressly denied to the petitioner, to determine what was pertinent, and what was not pertinent, to the subject which was under consideration. That subject had been announced in open court to be the investigation of the proceedings whereby the Barber Lumber Company had acquired title to timber lands of the United States in the state of Idaho. It was not disputed that the Barber Lumber Company was incorporated without the state of Idaho, and that the petitioner was, and from the first had been, the manager of its business in the state of Idaho. It followed from this that the acquisition of title to timber lands must have been conducted on behalf of the corporation by the petitioner, and that everything that was done in that connection was done with his knowledge and under his direction. If, therefore, there was criminal violation of law in acquiring those lands, there is every reason to assume that the petitioner must necessarily have been implicated therein, and that an inspection of the books would furnish evidence against him. That was one of the grounds of his appeal to the protection afforded by the fifth amendment and his refusal to comply with the order of the court. The fifth amendment,

which provides that one may not be compelled in a criminal case to be a witness against himself, is closely allied with the fourth amendment, which inhibits unreasonable searches and seizures. Said the court, in Boyd v. United States, 116 U. S. 616–633, 6 Sup. Ct. 524, 534, 29 L. Ed. 746:

"We have been unable to perceive that the seizure of a man's private books and papers to be used in evidence against him is substantially different from compelling him to be a witness against himself. We think it is within the clear intent and meaning of those terms."

On page 631 of 116 U. S., page 533 of 6 Sup. Ct. (29 L. Ed. 746) the court said:

"And any compulsory discovery by extorting the party's oath or compelling the production of his private books and papers to convict him of crime, or to forfeit his property, is contrary to the principles of a free government."

Elsewhere in the opinion, the court said:

"It is our opinion, therefore, that a compulsory production of a man's private papers, to establish a criminal charge against him or to forfeit his property, is within the scope of the fourth amendment to the Constitution in all cases in which a search and seizure would be, because it is a material ingredient and affects the sole object and purpose of search and seizure."

But it is said that while one may not be compelled in a criminal case to produce his own books and records, if they tend to criminate him, he can claim no protection under either the fourth or the fifth amendment when, as here, he is called upon to produce, not his own books, but the books of a corporation of which he is an officer. In support of that view reference is made to McAlister v. Henkel, 201 U. S. 90, 26 Sup. Ct. 385, 50 L. Ed. 671, in which the court said:

"Indeed, the authorities are numerous to the effect that an officer of a corporation cannot set up the privilege of a corporation as against his testimony or the production of their books."

But here the petitioner is not setting up the privilege of the corporation as against the production of its books. He is asserting his own privilege, for his own benefit, on the ground that the books of the corporation, of which he is the custodian, will tend to incriminate him.

In Hale v. Henkel, 201 U. S. 43, 26 Sup. Ct. 370, 50 L. Ed. 652, Hale, who was the secretary and treasurer of a corporation, had been subpoenaed to produce the books and papers of that corporation before a grand jury. He asked to be advised of the nature of the investigation in which he had been summoned. Upon being informed by the district attorney that it was a proceeding under the Sherman act to protect trade and commerce against unlawful restraint and monopolies, and that, under Act Feb. 25, 1903, c. 755, 32 Stat. 904 [U. S. Comp. St. Supp. 1905, p. 602], no person could be prosecuted or subjected to any penalty on account of any matter or thing concerning which he might testify, or produce documentary evidence in any prosecution under said act, the witness refused to answer questions or to produce the papers and documents called for in the subpoena, upon the ground that they might tend to criminate him. He was

committed for contempt, and habeas corpus proceedings were instituted for his release. On appeal to the Supreme Court, it was held, following Brown v. Walker, 161 U. S. 591, 16 Sup. Ct. 644, 40 L. Ed. 819, that the witness could not refuse to answer for the reason that the act of February 25, 1903, afforded him absolute immunity against future prosecution for the offenses as to which he was to be interrogated and was to produce books and documents. The court said:

"The interdiction of the fifth amendment operates only where the witness is asked to incriminate himself; in other words, to give testimony which may possibly expose him to a criminal charge. * * * If the constitutional amendment were unaffected by the immunity statute, it would put it within the power of the witness to be his own judge as to what would tend to incriminate him, and would justify him in refusing to answer almost any question in a criminal case, unless it clearly appeared that the immunity was not set up in good faith."

It is the clear meaning of these words, and the plain import of the decision, that, but for the immunity statute, the witness would, under the fifth amendment, have had the right to judge for himself as to what would tend to incriminate him, and would have been justified in refusing to answer almost any question. And such was the view of the court below in the decision from which the appeal in that case was taken. In re Hale (C. C.) 139 Fed. 496. In that case, Wallace, Circuit Judge, said:

"The contention for the petitioner, that the order of the court violates the constitutional prohibition against compelling a person to give evidence against himself in a criminal case, would be fairly sound, were it not for the effect of the immunity act of Congress of February, 1903."

There were further remarks of the court in that case which are particularly applicable to the present case. Said the court:

"In view of his official relations with the corporation, it fairly may be assumed that the petitioner had participated personally in some of the acts or transactions which were the alleged offenses of the corporation, and was therefore originally responsible himself."

When a question is propounded to a witness in the course of his examination in court or before a grand jury, he may be compelled to answer, unless there is reasonable ground to apprehend that his answer may furnish a link in the chain of evidence that might expose him to criminal prosecution. On the trial of Aaron Burr, 25 Fed. Cas. 38, No. 14,692e, it was contended on the part of a witness that he was to be the sole judge of the effect of his answer. Chief Justice Marshall held that this was too broad a claim, but also held that it would be too narrow a rule to hold that a witness can never refuse, unless the answer will per se convict him of crime, and that the correct rule is that a witness is not compellable to disclose a single link in the chain of proof against him. In Ex parte Irvine (C. C.) 74 Fed. 954, Judge Taft held that where, from the evidence and the nature of the question, the court can definitely determine that the question, if answered in a particular way, might form a link in the chain of evidence to establish the commission of a crime by

the witness, the court can inquire whether the witness claimed his privilege in good faith, otherwise it is only where the incriminating effect of the question is doubtful that the witness' motive may be considered, for in such a case his bad faith would tend to show that his answer would not subject him to any danger. The reasons why a witness may not be required to answer a question which he claims may tend to criminate him apply with added force to a case where he is ordered to subject to the inspection of a grand jury books and papers which contain the record of his connection with transactions which are alleged to be criminal in their nature. In the present case, it is not perceivable that there can be any question of the good faith of the petitioner in declining to subject the books to examination. Although they are in fact the books of the corporation, they are nevertheless to all intents and purposes his own books. They are records made by him or under his direction, and are in his charge and control. They refer to transactions which he has conducted. If they show the method in which the corporation acquired title to timber lands, they necessarily disclose his own acts. It is not denied that the presentation of the books and their inspection by the grand jury is desired for one purpose only. This is fully shown by the record of the proceedings before the court. It is that they be resorted to to ascertain what individual or individuals may be subject to indictment for violation of the laws of the United States in acquiring title to timber lands. I think it very clear that if the books contained the evidence thus sought, tending to prove the violation of law, there was reasonable ground for concluding that they might have tended to incriminate the petitioner, and that therefore his plea of privilege should have been sustained.

The present case is plainly distinguishable from United States v. Collins (D. C.) 145 Fed. 709, recently decided by Judge Wolverton in this circuit. In that case a partner was subpœnaed to bring the partnership books before the grand jury. In the contempt proceedings which ensued, the subject-matter of the investigation before the grand jury was not disclosed; nor was it shown what relation the witness sustained thereto, or in what manner the investigation would affect him. It appeared that he claimed the protection of the fifth amendment before he had been sworn as a witness. The court held that, until he was sworn as a witness, so that his claim of a constitutional privilege might be made under the sanction of an oath, he could not assert it.

As the return to the order to show cause is precisely the same that the marshal must have made if a writ of habeas corpus had been issued and served on him, all the facts are presented, and it is possible to determine the right of the petitioner to be discharged as fully as if he were present under the writ and in the marshal's custody. Ex parte Yarbrough, 110 U. S. 653, 4 Sup. Ct. 152, 28 L. Ed. 274; Ex parte William Wells, 18 How. 308, 15 L. Ed. 421; Ex parte Watkins, 7 Pet. 571, 8 L. Ed. 786; Ex parte Bull, 1 Saund. & C. 141; Ex parte Cross, 2 H. & N. 354; Sims Case, 7 Cush. (Mass.) 285.

Under the authorities, I am compelled to hold that the judgment committing the petitioner for contempt is void, and that he is entitled to be discharged from custody.

It is so ordered.