# LOUIS CAHEN *vs.* A. LINGAN JARRETT, Clerk of the Circuit Court for Harford County.

*Constitutionality of the Act of* 1874, *ch.* 439, *regulating the issuing of Licenses for the Sale of Spirituous and Fermented Liquors in the State—Police regulation—Duty of Grand Juries under the Act of* 1874, *ch.* 439.

The Act of 1874, ch. 439, entitled, "An Act to regulate the issuing of licenses for the sale of spirituous and fermented liquors in this State," provides that from and after its passage, "it shall not be lawful for the clerks of the Circuit Courts of this State, to issue any license for the sale of spirituous or fermented liquors, or lager beer, to any person or body politic in this State, unless such person, or body politic, shall have been recommended to said clerks by the grand jury which shall have been in session at the term next preceding the first day of May, in each and every year, in the county where the applicant for such license shall reside." HELD:

That this Act is constitutional, being a legitimate exercise of the police power of the State.

A grand jury, because there were many persons whom they could not conscientiously recommend for licenses to sell spirituous liquors, *and not wishing to discriminate*, would not be justified under the Act of 1874, ch. 439, in refusing to recommend any of the applicants for such licenses. As between proper and improper persons to receive licenses, it is the duty of the jury to *discriminate* with justice and impartiality. To procure such *discrimination* was the real object of the law.

Under the Act of 1874, ch. 439, a license to sell spirituous liquors, issued in the absence of the recommendation of the grand jury, is utterly void.

APPEAL from the Circuit Court for Harford County.

The case is stated in the opinion of the Court.

The cause was argued before BRENT, GRASON, MILLER and ALVEY, J.

*H. Stump, Henry W. Archer* and *Henry D. Farnandis,* for the appellant.

The Legislature has no power to prohibit legitimate trade, or deprive our citizens of the right to use and dispose of their property, except within the scope of *bona fide* sanitary or police regulations. And the law under which the appellant is deprived of his right to deal in spirituous liquors, &c., is not in any just sense a sanitary or police law, or a regulation of traffic.

The traffic in spirituous liquors is, by the general laws of the State, a legitimate business, which has been regulated by the provisions of the Code under which the appellant claims a license. The record shows, as an admitted fact, that he has invested his money in property, the value of which depends upon his right to prosecute the business he is engaged in—while the denial of the right is a virtual confiscation of his property. Can it be said that the Legislature could, by a wanton exercise of arbitrary power, break up his business, and confiscate his property, without at least making just compensation?

It is admitted that the article in which he deals is good and wholesome; that he keeps a quiet and orderly house; that he is a suitable person, and his house a suitable place for the business, which is averred and admitted to be a convenience and benefit to the community.

The Act of 1874, ch. 439, professes to clothe the Grand Jury with an arbitrary power to prohibit the appellant and all other citizens of Harford County from carrying on a business which the Act itself recognizes as legitimate, without reason, and against an admission of facts, which negative all idea that the license is withheld for reasons which could alone have justified it. And it likewise empowers the Grand Jury to create at pleasure a monopoly in the trade.

The cases decided in this State appear to settle the point, that it is competent for the Legislature to submit to the judg-

ment of some other body, to determine when and where the health or morals of the community require restrictions upon the traffic in liquors. These cases assume, and can only be sustained upon the ground that the citizens of North-East, in the case of *Hammond vs. Haines,* and the citizens of districts in the case of *Fell vs The State,* and the Judges of the Court in the case of *Lancaster vs. The State,* should pass judgment upon the necessity or propriety of the proposed restrictions—but cannot properly be considered as deciding that the Legislature could delegate such arbitrary powers as the Act of 1874 appears to authorize, and as our Grand Jury have in fact exercised, without regard to the necessity or propriety of the restriction, or the individual rights of parties affected thereby. See *Goshen vs. Stonington,* 4 *Conn.,* 225 ; *People vs. Draper,* 15 *New York,* 543 ; *Hammond vs. Haines,* 25 *Md.,* 560 ; *Fell vs. The State,* 42 *Md.,* 71 ; *Cooley on Constitutional Limitations,* secs. 167, 174, 175, 176, 573, 574, 575, 576, 577, 583, 584 ; *Regents, &c., vs. Williams,* 9 *G. & J.,* 408; *Bill of Rights, Art.* 23 *and Art.* 41 ; *Constitution of Maryland, Art.* 3, sec. 40 ; *14th Amendment to the Constitution of the U. S; Bartemeyer vs. Iowa,* 18 *Wallace,* 129.

*William Young* and *Geo. Y. Maynadier,* for the appellee.

The only point presented by the record and appeal in this case, is the constitutionality or unconstitutionality of the Act of 1874, ch. 439. In the enactment of this law, has the Legislature transcended its power and authority ? *Hammond vs. Haines,* 25 *Md.,* 541 ; *Fell vs. State,* 42 *Md.,* 71 ; *Code, Art.* 56, *sec.* 71 ; *Ward vs. State,* 31 *Md.,* 279 ; *Act of* 1825, *ch.* 214 ; *Act of* 1827, *ch.* 117, *sec.* 3.

The Act of 1874, ch. 439, is complete in itself. It required no other sanction, and was unaffected by the action or non-action of the Grand Jury.

The State has the power to pass laws regulating the traffic in spirituous liquors, in the exercise of its right to

protect the morals and health of the community, and regulate its internal police. *Keller vs. State*, 11 *Md.*, 525, 533, 534.

The Legislature being the sole judge of the necessity and expediency of the law, no averment or admission of facts, or statement of the individual grievances of the appellant, can negative the plain provisions of the Act, or entitle him to a license without the recommendation of the Grand Jury.

ALVEY, J., delivered the opinion of the Court.

The only question presented on this appeal is, Whether the Act of the Legislature of 1874, ch. 439, is constitutional or not.

That Act provides, that from and after its passage, "it shall not be lawful for the clerks of the Circuit Courts of this State to issue any licenses for the sale of spirituous or fermented liquors, or lager beer, to any person or body politic, in this State, unless such person or body politic shall have been recommended to said clerk by the grand jury, which shall have been in session at the term next preceding the first day of May, in each and every year, in the County where the applicant for such license shall reside;" and all Acts or parts of Acts inconsistent therewith are repealed. From the operation of the Act are excepted Baltimore City, Baltimore County, Prince George's, Allegany, Somerset, Carroll, Howard, Washington, Wicomico, St. Mary's, Dorchester and Anne Arundel Counties.

The appellant, being a resident of Harford County, where the Act is in force, and having been a retailer of spirituous and fermented liquors, in quantities not less than a pint, made due and formal application to the clerk of the Circuit Court of that county, on the 4th of March, 1875, for a renewal of his license, to authorize him to continue his business as such retailer of spirituous and fermented liquors, in quantities not less than a pint, for the period of one year, commencing on the first of May, 1875, and end-

ing on the first of May, 1876, making tender, at the time, of $50, the price of such license, according to the rates fixed by law.

This application was refused by the clerk, because the applicant had not been recommended to receive such license by the grand jury of the county, which were in session at the term of Court next preceding the first of May, 1875. Whereupon the appellant made application for a *mandamus*, to be directed to the clerk, requiring the latter to issue the license, notwithstanding the want of recommendation from the grand jury. To this application for the writ of *mandamus*, the clerk, in response, set up and relied upon the Act of 1874, and the failure of the grand jury to recommend the appellant, as a full and complete justification of his action in refusing to issue the license on the appellant's application ; and hence arose the question of the constitutionality of the Act of 1874, chapter 439.

The Court below refused the writ of *mandamus* and dismissed the petition of the appellant, and from the judgment thus disposing of the case the present appeal is taken.

In the argument of the case in this Court, it has been contended on the part of the appellant, that the Act in question is not a legitimate exercise of the police power of the State, but that it is the delegation of arbitrary and despotic power, in the exercise of which the lawful trade and business of the citizen may be destroyed at the will and pleasure of a grand jury ; and it has been strongly denied that the Legislature has power to delegate any such discretion over the right of the citizen to use and dispose of his property, as has been attempted by this Act of 1874, chapter 439.

It is not pretended that this statute falls within the prohibition of any express provision of the Constitution ; but it is contended that it violates the fundamental principle of right and justice, inherent in the nature and spirit of the social compact, which restrains and sets bounds to Legislative power ; and the case of *The Regents*, in 9 *Gill*

*& John.*, 408, is relied on in support of the proposition contended for by the appellant. But, in our view, the principle enunciated in the case referred to has no application to this case whatever.

No one can mistake the object of the Legislature in passing the Act in question. It was to place restraint upon the indiscriminate grant of licenses, in order to avoid, as far as possible, the evils flowing from the great, and constantly increasing, number of places for the retail of spirituous and fermented liquors. It was intended to keep licenses out of the hands of those who should be ascertained to be unfit to hold them,—persons without moral restraints, and whose establishments would likely become sources of disorder, and nuisances to the surrounding community. In other words, the Act was intended to discourage and prevent some of the many evils which have their origin in the traffic in ardent spirits. And such being its object, it is a police regulation in the strictest sense of those terms; for the definition of which, see 4 *Bl. Com.*, 162, and *Cooley on Const. Lim.*, 572.

Within the limits of that power, which is essential to the social existence and well-being of all States and communities, it is competent to the State to prohibit the traffic in ardent spirits altogether ; and many of the States of the Union have passed laws to that end ; and while there have been questions as to the mode of the enactment of some of those laws, the general power of the States to prohibit the internal traffic entirely, has, in all instances, been acknowledged and maintained by the Courts, both State and Federal. And in this State, the same Legislature that passed the Act now under consideration, passed a local Act conditioned for its effect and operation upon the sense of the qualified voters of the particular counties or districts therein mentioned, as to whether there should be or not licenses granted for the sale of spirituous and fermented liquors, and the vote, in some of the election districts, being against

the sale of liquor, and in favor of the operation of the law, upon question made as to the constitutional mode of enactment, this Court, at the last term, sustained the validity of the law, and thus fully affirmed the power of the Legislature to prohibit the traffic altogether. *Fell vs. The State, ante p.* 71, of this volume.

If then, the State has power to prohibit, it certainly has the power to regulate the traffic, by determining who, and what character of persons, shall be licensed to deal in the article. The power to pass license laws is conceded to exist, and such power has been exercised from the foundation of the State. Such laws are all in their nature prohibitory, except upon the conditions prescribed by them. None can traffic but those obtaining licenses according to law. Having full and complete control over the subject, as an article of internal commerce, the State can prescribe what conditions it may think proper upon which licenses can be obtained. It becomes simply a question of degree of prohibition. We refer here to the exercise of the police power of the State, and not to the State's power to impose licenses simply with a view to realize revenue. We have had for many years license laws upon the statute book, prescribing terms, other than the payment of the price, upon which licenses could be obtained to traffic in liquor. In order to obtain a license to keep an ordinary, in which liquor may be sold, the applicant is required, by Article 56, sec. 71, of the Code, to procure the recommendation of two respectable freeholders of his immediate vicinity ; and by section 42 of the same Article, (Act 1862, chapter 49,) no license can be issued to any *féme covert*, or minor, for the sale or barter of spirituous or fermented liquors, except upon the special order of a Judge, founded upon the recommendation of at least ten respectable freeholders of the immediate neighborhood. These laws have never been called in question, and no one, we suppose, has ever imagined that they could be successfully assailed. Besides

37 v. 42.

these restrictions, the clerk is forbidden, without the special order of the Court, or the Judge thereof, to grant a license to any person to sell spirituous or fermented liquors from whom the grand jury may have recommended a license to be withheld, or to a person whose license has been suppressed by the Court. *Code, Art.* 56, *sec.* 92. This has been the unquestioned law of this State ever since the Acts of 1827, chapter 117, sec. 3, and 1831, chapter 323, sec. 11; and if the position of the appellant in this case could be sustained, it would seem to follow that these several statutory restrictions would be obnoxious to the same objection as that upon which the Act of 1874 is sought to be condemned.

But these restrictions and conditions are not only wholesome and necessary, but they are valid regulations of the subject. Nor is this State singular in the imposition of such conditions and restrictions upon the grant of licenses for the trade in spirituous liquors.

In the case of *Thurlow vs. The Com. of Massachusetts,* embraced in the license cases, reported in 5 *How.,* 504, there was a question very similar to the one presented in this case. There the party was indicted and convicted, under a statute of the State, for selling foreign spirits, without a license. By the statute it was provided, that no person should presume to be a retailer of spirituous liquors, in less than a certain quantity, unless he was first licensed so to do; and by another section, the County Commissioners were authorized to grant licenses, coupled, however, with the proviso, that the statute should not be so construed as to require the Commissioners to grant any licenses, when, *in their opinion,* the public good did not require them to be granted. It was contended in that case, that, as the license might be withheld altogether at the discretion of the Commissioners, the law was an undue restriction upon the rights of the citizen, and in violation of the commercial clause of the Constitution of the United States.

But the Supreme Court of Massachusetts held otherwise, and maintained the law, as being neither in violation of the State nor Federal Constitution, and that opinion was fully affirmed by the Supreme Court of the United States.

And so in the case of *Fletcher vs. The State of Rhode Island*, another of the license cases, in 5 *How.*, 504, 540. In that case the traverser was indicted and convicted for selling imported liquors in violation of the law of Rhode Island. By the statute of that State, it was provided that no license should be granted for retailing liquors in any town or city in that State, if the electors in such town or city should, at their annual town or ward meetings, held for the election of officers, decide that no such licenses should be granted for that year ; and in pursuance of this authority, the town council of Cumberland, in that State, refused to grant any licenses for the retail of spirituous liquors for a year from April, 1845, having been instructed to that effect by a town meeting, but, notwithstanding, the traverser proceeded to sell his liquors without license. It was there contended that the license Act was void, because it was an unlawful restriction of the right of the traverser, and that the Act was in contravention of the Constitution of the United States ; but the Supreme Court of Rhode Island held the statute to be valid, both under State and Federal authority, and the Supreme Court of the United States also affirmed that decision, as it did the decision in the case of *Pierce vs. New Hampshire*, in which a like question was involved.

In these cases, as reported in 5 *How.*, there is a most elaborate discussion, not only by counsel, among the ablest of the country, but by several of the Judges of the Court, as to the nature, the extent and limit of the police power inherent in the several States ; and the result at which all the Judges arrived was, that the several license laws involved were but police regulations, and, as such, were within the full and complete control of the States.

All license systems embody, more or less, restraints and conditions; and, in order that the subject be kept within proper control, and to avoid the abuse incident to an indiscriminate grant of licenses, it may be necessary that discretion be reposed in some one or a number of persons; and no body of individuals could be more appropriate for the exercise of such discretion, looking to the peace and good order of the community, than the grand jury. To them, as has been well said, is committed the preservation of the peace of the county, the care of bringing to light for examination, trial and punishment, all violence, outrage, indecency, and terror; everything that may occasion danger, disturbance, or dismay to the citizens. They are watchmen stationed by the laws to survey the conduct of their fellow-citizens, and inquire where and by whom public authority has been violated, or the laws infringed. 1 *Wh. Cr. L.*, sec. 454.

This, however, like all other delegations of power, may be mistaken, or may be abused, even by a grand jury. It was clearly not intended by the Legislature that there should be an indiscriminate refusal of recommendations for licenses. The object of the law, as we have said, was to withhold licenses from those who, from character or other causes, were ascertained to be unfit to receive them, or where an evil would likely result from their being granted. In reference, however, to this, the grand jury should not exercise an arbitrary power; that violates the law. They act upon their oaths, and should, in respect to this, as to all other matters given them in charge, make diligent inquiry, and act with entire justice and impartiality in all cases before them.

Here, the grand jury of Harford County, convened at the next preceding term of Court to the first of May, 1875, in their report to the Court, and which is made an exhibit in the case, stated, that, as there were many persons whom they could not conscientiously recommend for licenses to

sell spirituous liquors, *and not wishing to discriminate*, they had determined not to recommend any of the applicants for such licenses. This was clearly not in accordance with the spirit and intent of the law. As between proper and improper persons to receive licenses, it was the duty of the jury to discriminate with justice and impartiality. To procure such discrimination was the real object of the law.

But the recommendation of the grand jury of *that particular term* being a condition precedent to the right of the appellant to receive a license, such as he applied for, the absence of such recommendation, from whatever cause, formed a full justification to the clerk in refusing the license upon the application of the appellant. Indeed, the license would have been utterly void without such recommendation.

It follows that the Court below was right in the judgment rendered by it, and that judgment must be affirmed, with costs.

*Judgment affirmed.*

(Decided 8th June, 1875.)