Blaney *vs.* State.

and they were actually in arrear when the sale was made; they were therefore properly chargeable against the fund.

*Judgment affirmed.*

(Decided 25th March, 1891.)

---

WILLIAM BLANEY *vs.* STATE OF MARYLAND.

*Grand juries—Powers—Coroner—Inquest and Commitment on Sunday.*

Grand juries in this State have plenary inquisitorial powers, and may lawfully, upon their own motion, originate prosecutions against offenders, though no preliminary proceedings have been had before a magistrate, and though neither the Court nor the State's attorney has laid the matter before them.

An inquest held by a coroner, and a commitment signed by him, are rather ministerial, than judicial, acts, and are not void because done on Sunday.

APPEAL AS UPON WRIT OF ERROR, from the Criminal Court of Baltimore.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., MILLER, IRVING, BRYAN, FOWLER, McSHERRY, and BRISCOE, J.

*N. Winslow Williams,* and *Henry W. Williams,* for the appellant.

*Wm. Pinkney Whyte, Attorney-General,* for the appellee.

McSHERRY, J., delivered the opinion of the Court.

William Blaney was indicted by the grand jury of Baltimore City for the murder of his aunt, and upon his

Blaney *vs.* State.

arraignment he interposed the following motion called in the record a plea in abatement, viz., "The defendant, William Blaney, by his counsel, N. Winslow Williams, hereby moves that the indictment be quashed for the following reasons: 1st. It appears upon the face of the record that the grand jury was without jurisdiction to find the same.   2nd.  The said indictment is not based upon an accusation made before a committing magistrate, nor was said case given in charge to the grand jury by the Court or State's Attorney.   3rd.  The said indictment is not based upon a presentment by the grand jury made upon the personal knowledge or observation of its members, or upon the testimony of witnesses sent to it by the Court or State's Attorney.   4th. The offence charged in said indictment is not of such a character or of such public notoriety as to require or warrant an extraordinary original investigation and presentment by the grand jury.   5th.  The preliminary hearing, coroner's inquest and commitment upon which such indictment was intended and supposed to be based, were held and had entirely on Sunday, without necessity or warrant, and were therefore void and of no effect."   To this plea the State demurred, and the demurrer being sustained by the Court, the accused then pleaded not guilty, and was put upon his trial which resulted in his being convicted of murder in the first degree.   After sentence of death had been passed upon him he filed a petition in the Criminal Court asking that the record be removed to this Court as upon writ of error.   The error assigned is the ruling of the Criminal Court in sustaining the demurrer to the plea in abatement.

The record shows that the coroner committed the accused to jail on Sunday, May the fourth, 1890.   That the warden of the city jail on the following day transmitted to the Criminal Court a copy of the coroner's commitment, and a list of witnesses appended thereto, and

that two days later, the grand jury having heard the witnesses, returned the commitment into Court endorsed "presentment," which endorsement was signed by the foreman.   On the tenth of May, the indictment now before us was returned in due form by the grand jury. It is this indictment which the accused alleges the grand jury were without jurisdiction to find.

The theory upon which the plea is founded rests upon an entire misconception of the scope and extent of the powers and the jurisdiction of a grand jury in Maryland. The plea assumes that a grand jury are without authority to indict (except in a few unimportant cases) unless upon the personal knowledge or observation of the members thereof, or unless the matter be given them in charge by the Court, or be laid before them by the State's Attorney, or the accusation be first made before a committing magistrate.   This view, whilst adopted and acted on in the some of the States, has never prevailed in Maryland, at least since the Revolution.   It denies the grand jury all inquisitorial power—one of their most important functions—and limits them to the investigation only of cases laid before them, or falling under their personal knowledge or observation.   It prohibits them from originating a prosecution though the ends of justice might be absolutely defeated by the publicity incident to the taking of initiatory steps before a magistrate.   It circumscribes the sphere of their usefulness, and in a large measure deprives them of most efficient means to bring the lawless and the vicious to speedy trial and punishment.

That grand juries may on their own motion institute all prosecutions whatever is a view which was generally accepted at the institution of the Federal government, and was in accordance with the English practice then obtaining.   *Wharton's Crim. Pl. & Prac., sec.* 334; *Lord Chief Justice* EYRE's *charge in Hardy's Trial,* 24 *How. St. Tr.,* 201; *Thompson & Merriam on Juries, sec.*

615. Their powers are thus defined by Judge ADDISON: "To them is committed the preservation of the peace of the county, the care of bringing to light for examination, trial and punishment, all violence, outrage, indecency and terror; everything that may occasion danger, disturbance or dismay to the citizen. They are watchmen stationed by the laws to survey the conduct of their fellow-citizens, and inquire where and by whom public authority has been violated, or the laws infringed." *Addison's Charges,* 47. This language was quoted with approval by this Court in *Cohen vs. Jarrett,* 42 *Md.,* 580. Such was also the view of the late Mr. Justice WILSON of the Supreme Court of the United States. 2 *Wilson's Lectures on Law,* 361. "They have the right to originate charges against offenders," said CHURCH, Ch. J. in *State vs. Walcott,* 21 *Conn.,* 272–280, "without forewarning them of their proceedings against them." The same doctrine was broadly announced in Missouri. *Ward vs. The State,* 2 *Mo.,* 120. In addition to all this the oath administered to grand jurors binds them to present not only the matters and things which shall be given them in charge, but also those which shall *otherwise* come to their knowledge; and thus clearly implies if it does not expressly concede, that they possess the very power denied them by the plea.

However restricted the functions of grand juries may be elsewhere, we hold that in this State they have plenary inquisitorial powers, and may lawfully themselves, and upon their own motion, originate charges against offenders though no preliminary proceedings have been had before a magistrate, and though neither the Court nor the State's Attorney has laid the matter before them. The peace, the government and the dignity of the State, the well-being of society and the security of the individual demand, that this ancient and important attribute of a grand jury should not be narrowed or inter-

Blaney *vs.* State.

ferred with when legitimately exerted.　That it may in some instances be abused is no sufficient reason for denying its existence.　Though far-reaching and seemingly arbitrary this power is at all times subordinate to the law, and experience has taught that it is one of the best means to preserve the good order of the Commonwealth and to bring the guilty to punishment.

Holding as we do that grand juries may, in this State, lawfully upon their own motion originate prosecutions against offenders, it is of no consequence how the case at bar was brought to their attention.　The subject was within the jurisdiction of the grand jury for Baltimore City; they acted upon it and returned in due form the indictment upon which the accused was arraigned, tried and convicted.　This is all that was necessary.

We may add that the inquest held by the coroner, and the commitment signed by him on Sunday, were not void on that account.　Of course, no judicial act can be done on Sunday, but it does not follow that no step can be taken on that day to apprehend a criminal.　An inquest held by a coroner's jury, and the commitment by a coroner or magistrate of an accused to jail are rather ministerial than judicial acts—they are certainly not of that judicial character which precludes their being performed on Sunday.　*State vs. Sneed,* 84 *N. C.,* 816.　The verdict of a jury may be lawfully rendered and recorded on Sunday, because those are ministerial acts.　*Hoghtaling vs. Osborne,* 15 *John.,* 119; *True vs. Plumley,* 36 *Me.,* 466; *State vs. Ricketts,* 74 *N. C.,* 187.　Society would be absolutely at the mercy of desperadoes and criminals, if the officers charged with the duty of enforcing the law and bringing the guilty to justice, were powerless to act ministerially on Sunday.

We find no error in the ruling of the Criminal Court, and its judgment must be affirmed.

*Judgment affirmed.*

(Decided 25th March, 1891.)