## In re REPORT OF GRAND JURY.  APPEAL OF HENRY G. PERRING et al.

*Grand Jury Report—Inquisitorial Powers—Criticism of Individuals.*

While the grand jury has the fullest inquisitorial power, they are, in the exercise of that power, confined to an investigation of violations of the criminal law, with the single end in view that the accused may be brought to trial.                p. 622

Apart from statute, the grand jury are confined to investigations of violations of the criminal law, and unless such investigations disclose facts constituting a recognized violation of that law, they have no power or authority to criticize any particular individual or number of individuals.                p. 623

Statements, in reports of grand jury, as to general conditions within their jurisdiction, may have a salutary effect, and should be permitted, so long as they do not point out individuals as subjects of public criticism and opprobrium.                p. 623

A report of a special committee of the grand jury, delivered to the criminal court at the same time as the final report of the grand jury, which, without charging any crime, criticized various public officials in connection with the construction of a school building, *held* to exceed the powers of the grand jury, and so to call for an order expunging the report from the records of the court.                pp. 617-632

*Decided March 23rd, 1927.*

Appeal from the Criminal Court of Baltimore City (O'Dunne, J.).

Petitions by Henry G. Perring and others, asking that the report of a special committee of the grand jury be struck from the records of the court. From an order denying the petition as to portions of the report, petitioners appeal. Reversed.

The cause was argued before Bond, C. J., Urner, Offutt, Digges, Parke, and Sloan, JJ.

*Philip B. Perlman*, with whom was *Roland R. Marchant* on the brief, for the appellants.

Digges, J., delivered the opinion of the Court.

The grand jury of Baltimore City for the May Term, 1926, completed its work and made its final report to the Criminal Court on September 10th, 1926. Delivered to the court at that time by the foreman of the grand jury was a report of a special committee of the grand jury composed of six members, designated as the report of the special committee on the Clifton Park high school. This report was signed by its chairman, who was also assistant foreman of the grand jury, and five other members of the grand jury. It contains a criticism of the methods of construction and the material used in the Clifton Park high school, located in Baltimore City, especially in respect to the alleged inefficiency of H G. Perring, supervising engineer of the Public Improvement Commission and head of the commission's bureau of construction, and the allowance of substitution of different material than that called for in the specifications, resulting in a lower cost of construction, for which the city got no credit, but which saving, it is alleged, benefited the contractor; it also inferentially criticising the Public Improvement Commission for entrusting the construction of the public school buildings to the supervision of the supervising engineer, and a lack of proper supervision by the commission. It is urged that on all future buildings of this sort the supervision be entrusted to the architect, in co-operation with the building inspector's office. The report further states that the special committee feels that the present arrangement results in duplication of effort and lack of efficiency, which is not only extravagant but dangerous. The General Assembly of Maryland, by chapters 373 and 374 of the Acts of 1920, authorized the issuance by the Mayor and City Council of Baltimore of its stock in the amount of $51,000,000 to be used in making city improve-

ments as specified in the acts; chapter 373 authorizing what
is known as the general improvement loan, and chapter 374
what is known as the water loan.   These acts of assembly re-
quire the Mayor and City Council of Baltimore to provide
by ordinance for a commission with full power to administer
the funds so authorized, to provide for their expenditure, to
employ such officers, agents, and servants as may be necessary
in connection therewith, and to supervise the entire disposi-
tion of the fund so far as the exercise of such power is not
inconsistent with the charter of the Mayor and City Coun-
cil of Baltimore; and said act further provided that the
Mayor and City Council should by ordinance provide for
such commission before the question of the issue of stock
should be submitted to the voters of the city.   Pursuant to
such acts of the General Assembly, the Mayor and City Coun-
cil, by Ordinance No. 376, approved July 2nd, 1920, created
the Public Improvement Commission, consisting of five citi-
zens and residents of the city, to be appointed by the Mayor
with the consent of the City Council, together with the Mayor
and chief engineer of Baltimore City, members *ex officio*.
Subsequently the Mayor and City Council by ordinance sub-
mitted the question as to the issuance of the stock thus author-
ized by the General Assembly to the legal voters of Baltimore
City, which was duly approved at the election in November,
1920.   The then Mayor of Baltimore City appointed five cit-
izens as members of the Public Improvement Commission,
who, together with the present Mayor and chief engineer,
now constituting said commission, and Henry G. Perring,
supervising engineer of the commission, are the appellants.

Subsequent to the filing of the report of the special com-
mittee of the grand jury, the appellants filed petitions in the
Criminal Court of Baltimore City, alleging among other
things that the report of the special committee on the Clifton
Park high school is improper and illegal, because: "(*a*) The
grand jury has no authority or power to return such present-
ments; (*b*) the grand jury had no power to authorize a special
committee to return such presentments; (*c*) the charges (or
presentments) contained in said report are not such upon

which any indictment can be drawn; (d) the report violates your petitioners' rights under the Bill of Rights of the Constitution of the United States and the Declaration of Rights of the Constitution of Maryland, in that it undertakes to make charges (or presentments) and to condemn your petitioners without the privilege of a trial by jury, or any other trial, without being heard in their own defense, and without an opportunity to produce witnesses or other evidence in their behalf; (e) the report (or presentment) in the manner made and published, is subversive of the principles of the government, and is opposed to every recognized rule of fairness and justice; and (f) because of other reasons to be assigned at the hearing. Wherefore your petitioners pray your Honor to pass an order striking from the records of this court said report (or presentment) of the special committee on the Clifton Park high school of the grand jury for the May term, 1926." Later various motions were made and orders passed, culminating in an order of the court on November 19, 1926, by which certain portions of the report of the special committee of the grand jury were ordered deleted from the record, but denying the petition of the appellants to expunge the whole report. From that order this appeal is taken.

The single question for decision is: Should the report of the special committee of the grand jury be stricken out? And this involves the question of the grand jury's right and power to make such a report. It is of no concern whether the matter contained in the report be true or false, as our conclusion must be based not on the truth or falsity of the report, but upon the right and power of the grand jury to make such a report. The institution known as the grand inquest, or the grand jury, is of ancient origin. An accusing body, not, however, a grand jury, so called, has been known to the law from the time of Henry III. As first constituted, the present functions and duties of the grand and petit juries were exercised by the same body. Bracton's account, as stated by Reeves in his *"History of the English Law,"* is that a general summons preceded the coming of the justices into a county, which commanded all persons to attend

at a certain time and place. At this assembly of the people
the justices evidenced their authority by reading their com-
missions and explaining the cause of their coming and the
commands of the king, enjoining them particularly of the
duty incumbent upon them, as subjects of the king, not to
harbor any outlaws, murderers, robbers or burglars. The
process of procuring an accusing body was then begun by
calling the bailiff of each hundred and requiring him under
oath to choose out of his hundred four knights, who were to
come before the justices and make oath that they would
elect twelve other knights, or if knights could not be had,
twelve "free and lawful men," who had no interest in the
matter to be investigated, nor were suspected of any offence,
and were such as were well qualified to dispatch the king's
business. The twelve thus selected, after being sworn, were
informed that they were to answer in their verdict separately
upon every article assigned, and were to return their answer
at a certain day. They were also charged that, if they knew
of any suspected persons in their hundred, they should in-
stantly apprehend them, if found, and if not, their names
were to be privately given to the justices, that they might
not have notice to escape. Whereupon the sheriff was com-
manded to take them and bring them before the justices.
Each hundred had its own accusing body; no witnesses were
examined, the presentments being made upon the knowledge
of the jurors in respect of any violations of law as were the
subjects of their inquiry. These twelve were sworn to speak
the truth, and, coming from the vicinage where the facts
arose, no one was in a better position to know of infractions
of the law than themselves. Later, in the forty-second year
of Edward III, at a commission of oyer and terminer, beside
the return on an inquest for every hundred by the bailiff,
the sheriff of the county was required likewise to return a
panel of knights, which the old records designate "Le
Graunde Inquest." 3 *Reeves, History of English Law,* 133;
*Forsythe, Trial by Jury,* 218; *Thompson on Juries,* 560-
562. After the practice began of returning the grand in-

quest to inquire for the whole body of the county, the business of the hundred-inquest declined, until the whole burden of presenting and finding indictments devolved upon the grand inquest, and the hundredors continued to be summoned merely for trying issues, or exercising the present functions of the petit jury. From that early time to the present, the grand jury has been continued and preserved as an institution necessary for the preservation of the peace, good order, and dignity of the state in bringing to trial those guilty of violations of law, and in protecting people from being put on trial upon frivolous, unfounded, or false accusations.

At common law, just as no man may be convicted and punished of a felony without the unanimous verdict of twelve of his peers, constituting the petit jury, neither can he be put to his trial for any such offense except upon the presentment or indictment by at least twelve of his fellow citizens, constituting the grand jury. This is true in Maryland, in the federal courts, and in most of the states of the Union, there being a few in which by statute a lesser number than twelve may present or indict. So jealously have the people generally regarded this requirement as a safeguard to liberty, that it is embodied in some form in most, if not all, of the constitutions. See the Fifth Amendment to the Federal Constitution, and the 21st article of the Bill of Rights of Maryland.

What are the duties and powers of a grand jury under the laws of this state? There has been much discussion and some discord, as shown by the opinions of courts in other states, upon the question of a grand jury's inquisitorial powers. However this may be in other jurisdictions, it is settled here that the inquisitorial powers of a Maryland grand jury are of plenary character. In the case of *Blaney v. State,* 74 Md. 153, our predecessors, speaking through Judge Alvey, said: "However restricted the functions of grand juries may be elsewhere, we hold that in this state they have plenary inquisitorial powers and may lawfully, them-

selves, and upon their own motion, originate charges against offenders, though no preliminary proceedings have been had before a magistrate, and though neither the court nor the state's attorney has laid the matter before them. The peace, the government, and the dignity of the state, the well-being of society, and the security of the individual, demand that this ancient and important attribute of the grand jury should not be narrowed or interfered with when legitimately exerted. That it may in some instances be abused, is no sufficient reason for denying its existence."

While it is true that the grand jury has and should have the fullest inquisitorial power, yet in the exercise of such power they are confined to an investigation of violations of the criminal law, with the single end in view that the accused may be brought to trial in the court whereof the grand jury is a part, to answer and defend the charges preferred against him, and wherein he can obtain a copy of the accusation, be confronted with the witnesses against him, be represented by counsel, and submit the question of his guilt or innocence to a petit jury. This function of the grand jury is accomplished by indictments or presentments, and while there is both a historical and technical difference between an indictment and a presentment, practically they are employed for the same purpose, that of informing the accused of the charges against him and affording him an opportunity to make defense. Technically, an indictment is a formal written accusation made by the public prosecutor, and submitted to the grand jury, in order that they may determine from competent evidence whether the accusation, if proven, would be sufficient to bring about the conviction of the accused. The grand jury, finding this to be true, endorses upon the indictment, "A True Bill," attested by its foreman. Presentments are accusations of crime made by the grand jury from their own knowledge or from evidence furnished them by witnesses or one or more of their members. In a presentment the grand jury charges that a specific person has been guilty of specific acts which constitute a violation of the

criminal law; and from this presentment the prosecuting attorney prepares an indictment and returns it to the grand jury for the endorsement of "A True Bill."

At common law the function of the grand jury is confined to investigations of violations of the criminal law, and unless such investigations disclose facts which would constitute a recognized violation of the criminal law, they have no power or authority to criticize any particular individual or number of individuals. If the evidence obtained through their investigations warrants a presentment or indictment, under the law and the oath which they are required to take, they are bound to present or indict, and if in their judgment it falls short of showing the commission of a criminal offense, they are bound to refrain from making public the results of their investigation. There are certain statutory provisions in most of the states requiring grand juries to make an investigation of the penal institutions within their jurisdiction and report their findings to the court; and what we have said in no way conflicts with their duty or authority in this respect as conferred by statute. The grand jury of Baltimore City, under a general provision contained in section 22 of article 51 of the Code of 1924, is required at each term of court to visit the jail and inquire into its condition, the manner in which it is kept, and the treatment of the prisoners, and report the same to the court; and by section 696 of article 27, the grand juries of Baltimore City and Anne Arundel County are required to inquire into the conduct and management of the Maryland Penitentiary and the Maryland House of Correction, "and shall make presentments of all offenses and omissions of any person in or relating to said institutions." It has long been the custom and practice in this state for grand juries, in making their report to the court, upon asking for their discharge, to make statements as to general conditions within their jurisdiction. Such reports may have salutary effect and should be permitted so long as they do not point out individuals as subjects of public criticism and opprobrium.

In *Blaney v. State, supra,* in speaking of the inquisitorial power of the grand jury, the Court remarked: "Though far-reaching and seemingly arbitrary, this power is at all times subordinate to the law." In 28 *C. J.* 799, it is said: "Grand juries sometimes make a sort of general presentment of evils or evil things, to call attention to them, yet not as instructions for any specific indictment. It has been held that a grand jury has no power to file with the court a report of this nature, charging no crime, but reflecting on the conduct of specified individuals, and the court may expunge such a report from the records where it appears to have been inadvisedly made, or is merely a guise to accuse a public official of laxity in the enforcement of certain laws." In 22 *A. L. R.* 1366, in the annotations to the case of *Ex parte Jennings,* at page 1367, it is said: "In the absence of a statute authorizing a grand jury to make reports which do not amount to indictments or presentments, reports are not privileged, because extra-judicial, and therefore may form a basis for libel." To the same effect see *Poston v. Wash., A. & Mt. V. R. Co.,* 36 App. D. C. 359, 32 *L. R. A.* (N. S.), 785, and *Rector v. Smith,* 11 Iowa, 302, where it was held that a grand jury could only present to the court the misconduct of an official by indictment, and that a report imputing misconduct in office to a county judge was beyond its powers.

In the case of *Bennett v. Kalamazoo Circuit Judge,* 183 Mich. 200, Ann. Cas. 1916E, 223, it was held that where the statutes do not provide for reports by grand juries as to the conduct of public officials, a report reflecting on the official conduct of the prosecuting attorney, not followed by an indictment, should be expunged from the records of the court on a motion of the official assailed. In the course of the opinion in that case the court said: "A review of all the cases cited upon both sides of the question, and such others as we have been able to examine, leads us to the conclusion that inherently, apart from statutory sanction, the grand jury has no right to file such a report, unless it is followed by an indictment. The evils of the contrary prac-

tice must be apparent to all.  While the proceedings of the
grand jury are supposed to be secret, it is clear that in the
present instance that secrecy was not inviolate, for the objec-
tionable report found its way into the press of Kalamazoo
within a few hours after it had been filed.  Whether the
matter contained in such report be true or false, it can make
no difference with the principle involved.  In either event
the accused person is obliged to submit to the odium of a
charge or charges based, perhaps, upon insufficient evidence,
or no evidence at all, without having the opportunity to meet
his accusers and reply to their attacks.  This situation is one
which offends everyone's sense of fair play and is surely not
conducive to the decent administration of justice.  Upon the
coming in of said report, we are of the opinion that it was
the duty of the trial court to have refused to accept it, or
file it with the records of his court.  Having received and
filed it, upon the application of the petitioner, it was plainly
his duty to expunge it from the files."

In *Rector v. Smith, supra,* the court said: "Grand juries
have no power, nor is it their privilege or duty, to present
any person for a criminal offense except by indictment.  If
the misconduct of an officer does not amount to a crime,
and is not of such magnitude as will justify the jury in find-
ing an indictment, their powers over the offense complained
of are at an end."  See also note to *Bennett v. Kalamazoo
Circuit Judge,* wherein the annotator states: "As a general
rule, a grand jury has no power to report crime or miscon-
duct otherwise than by an indictment or presentment"; and
cases there cited.

In the case of *Jones v. People,* 101 App. Div. 55, 92 N.
Y. Supp. 275, a dissenting opinion was delivered, which in
the later case of *Re Osborne,* 125 N. Y. Supp. 313, was
adopted as being founded on the "better reason."  In the
*Jones* case the grand jury of Nassau County made a pre-
sentment to the Supreme Court in which the board of super-
visors and two men who had acted as clerks of the board
were censured for not performing the duties of their respec-

tive offices in a manner to meet the approval of the grand jury. These individuals, with no opportunity offered them to be heard in their own defense, petitioned the county court of Nassau County, asking that the presentment be set aside on the ground that such presentment was without authority of law. In that dissenting opinion Judge Woodward pointed out the dangers which may result from the application of the rule laid down by the majority court, which refused to expunge the report, saying: "The question presented * * * involves the legal right of the grand jury to bring in a presentment against individuals where the evidence adduced does not disclose that any crime has been committed. In other words, we are asked to determine whether the grand jury, acting under the laws of this state, is authorized to make a public record * * * censuring individuals for alleged misconduct, where the conduct alleged does not constitute a crime; whether the State of New York has established an inquisition in which the conduct of citizens may be reviewed, and officially criticized and censured according to the standards of ethics or morals of such board, rather than by those standards which have been fixed and determined by the law of the land. * * * In determining the powers of the grand jury under the laws of this state, whether regulated by statute or usage constituting the common law, we have a right to consider what that body might do under this indefinite power of making presentments if that power be conceded. If it has the right to censure the petitioners in the matter now before us, it is difficult to conceive of any limitation upon the powers of the grand jury. It may establish its own standards of right and wrong and may subject the citizen to the odium of a judicial condemnation without giving him the slightest opportunity to be heard; oftentimes working, in the public estimate, as great an injury to his standing and character as though he had in fact been accused of a crime. This is a perversion of the essential spirit of the grand jury system, which had for its object the protection of the citizen against an open and public accusation of

crime, and from the trouble, expense, and anxiety of a pub-
lic trial, before a probable cause is established by the pre-
sentment and indictment. * * * It cannot be that it was ever
contemplated that this body, created for the protection of the
citizen, was to have the power to set up its own standards of
public or private morals, and to arraign citizens at the bar
of public opinion, without responsibility for its abuse of that
power, and without giving to the citizen the right to a trial
upon the accusation. * * * There are two great purposes,
one to bring to trial those who are properly charged with
crime, the other to protect the citizen against unfounded
accusations of crime. When the grand jury goes beyond this,
and attempts to set up its own standards, and to administer
punishment in the way of public censure, it is defeating the
very purpose it was intended to conserve; and its action
cannot, therefore, be lawful. * * * No one would contend
that a citizen could be indicted for anything less than a
crime, or that, if indicted, he could be denied an opportunity
to answer and to appear in his own defense before a jury;
and it seems equally clear that there is no constitutional
right to make a presentment against an individual in a case
where an indictment would not lie. The rights of the citizen
are the same under either an indictment or presentment.
* * ** This idea runs through all of the authorities which I
have been able to discover, that the jurisdiction of the grand
jury over individuals must depend upon the fact that a crime
or offense has been committed against the public. * * * If
the acts charged do not constitute a crime, then there is no
indictment before the court, and the petitioners clearly have
a right to be relieved of the odium of a judicial censure,
where the document in which such censure is contained is a
mere impertinence, without authority of law."

   In the *Osborne* case, *supra,* it was held that a paper or
report by a grand jury reflecting upon the professional integ-
rity of the prosecuting attorney would, on motion, be stricken
from the record. It was there said: "It has become a cus-
tom of almost invariable occurrence that the grand jury,

at the close of its term, makes a presentment on some subject on which, frequently, no evidence has been heard. This, no doubt, proceeds from the zeal of its members to promote the general welfare by calling attention to certain conditions which they believe should be remedied. So long as they are confined to matters of general interest they are regarded as harmless, even though a waste of time and effort, and after the ephemeral notice of the day has passed, they are allowed a peaceful rest. But it is very different when the motives and conduct of the individual are impugned, and he held up to reprobation, without an opportunity to defend or protect his name and reputation, for it must be borne in mind that if the gentlemen of the grand jury were to meet as an association of individuals and give expression to the sentiments contained in the presentment, little attention would be paid to them, and a healthy regard for the responsibility of utterances injurious to the individual would, in all probability, restrain exaggerated and unfounded statements. The mischief arises from a prevalent belief that a grand jury making the conventional presentment speaks with great authority, and acts under the sanction of the court, thereby giving to its deliverance a solemnity which impresses the mind of the public. This is a grave error. The powers and duties of a grand jury are defined by law. No matter how respectable or eminent citizens may be who comprise the grand jury, they are not above the law, and the people have not delegated to them arbitrary or plenary powers to do that, under an ancient form, which they have not a legal right to do."

In *Re Heffernan,* 125 N. Y. Supp. 737, a presentment charging certain borough officials with "neglect of their duties and of the public interest" was set aside and expunged from the records on the ground that it was inadvisedly made by the grand jury in excess of its powers. In the course of its opinion the court said: "They are not part of the administrative government of a great municipality. They have the fullest and amplest power to investigate, as it is their solemn and prescribed duty to do, into the willful and corrupt mis-

conduct in office, of public officers of every description in the
county.   Finding any such evidence of willful and corrupt
misconduct, it would be their clear duty to indict.   Then the
official could have his day in court, where he would receive
either the condemnation which he deserved if his actions
have been unlawful, or the vindication that he would desire
in case he was blameless.   From a grand jury, obviously
nothing but the fairest consideration of any questions sub-
mitted to them is expected.   The Star Chamber of the olden
days no longer exists, and any action on the part of a grand
jury which would partake of the character of the proceedings
of that ancient abhorred system would not be tolerated to-
day."

In *Re Woodbury,* 155 N. Y. Supp. 851, a petition was
granted to expunge a grand jury presentment which severely
censured the police board of the city for the lax manner in
which the excise law appeared to have been enforced.   In
this case the court, without referring to the case of *Jones v.
People, supra,* said: "It is unnecessary, in my determination
of this question, to decide whether 'presentment' and 'indict-
ment' are synonymous.   Much has been learnedly written on
this subject, and the weight of authority still seems to be that
the grand jury has a right to make presentments, even though
they be not followed by an indictment; but the courts seem
to be equally emphatic in insisting that a presentment can-
not be used by the grand jury merely as a guise to accuse
and thereby compel a person to stand mute, if the present-
ment would warrant an indictment so that the accused might
answer, and that when a presentment is merely a guise used
by the grand jury to accuse, the presentment should be ex-
punged from the record."

In *Bishop's Criminal Procedure* (2d Ed.), vol. 1, sec. 137,
sub-sec. 2, it is said: "Sometimes our grand juries make a
sort of general presentment of evils and evil things, to call
public attention to them, yet not as instructions for any
specific indictment.   No one could be called to answer to
such a presentment."   Commenting upon this statement, the

court, in the case of *Re Gardiner,* 64 N. Y. Supp. 760, said: "While it may be observed that the court has tolerated rather than sanctioned such presentments of things general, yet the grand jury should never, under cover of a presentment, present an individual in this manner; for if it have legal evidence of the commission of a crime, it should find an indictment against him upon which he could be held to answer, and if it have no such evidence, it ought, in fairness, to be silent. The powers of the grand jury extend only to questions of crime. Its functions are not executive, but judicial. It is in fact a preliminary tribunal, and it is furnished with inquisitorial powers only for the purpose of examining into crimes."

In *Parsons v. Age-Herald Publishing Co.,* 181 Ala. 446, in passing upon a grand jury report criticizing a constable, the court said: "They are neither required nor authorized by any statute to report the result of such investigations when they fail to find any impeachable fault or offense; and when they report and criticise any misconduct, real or fancied, of lesser grade, it cannot be for the purpose of invoking any judicial action and is in fact no part of any judicial proceedings, actual or potential."

In 1925 the grand jury of Niagara County filed with the court a lengthy report dealing with vice conditions in the city of Lockport, New York. The mayor and the police commissioners of the city petitioned the court to strike the report or presentment from its records. This was done, the court saying: "The grand jury itself says that the mayor and police commissioners 'are men of eminent respectability, high character and engaged in lawful occupations.' Not one of these men has been indicted. All of this leads me to the conclusion that the portion of the so-called presentment or report above quoted constitutes an unwarranted imputation on the integrity, the good faith, and the honesty of the petitioners." *In re Crosby,* 213 N. Y. Supp. 86.

In some of the reported cases the matter asked to be expugned was spoken of as contained in a "presentment," and

in others as being contained in the "report" of the grand jury. These terms are used synonymously, not in a technical sense, but as indicating a written communication made by a grand jury and filed with the court, wherein there is no crime charged and no facts upon which an indictment could be framed, but nevertheless arraigning individuals in the conduct of official or public duty, compelling the one against whom the criticism or accusation is directed to stand silent, without the opportunity to meet and defend the charges in a trial.

The report in the present case does not charge any violation of law, but is a censure of the conduct of persons engaged in the public business, impugning their integrity and fairness, and pointing them out as public servants whose official acts should merit condemnation at the hands of the people. The function of the grand jury is to investigate violations of the criminal law, and in performing this function their inquisitorial powers are unlimited. If, however, having exercised these powers in any given case, there is lacking sufficient evidence to indict, their duty in that particular case ceases, and, under their oath, nothing transpiring within their body should be made public. It is apparent that this should be so, for the protection of the good name and reputation of the people, otherwise a condition would exist which the establishment and zealous maintenance of the grand jury was intended to prevent, namely, that of having an individual publicly charged with misconduct without probable cause. If there is sufficient evidence of the commission of a crime, it is the duty of the grand jury to indict, that is, to take such action as will bring the party to trial; if there is not, the citizens are and should be protected against accusations by that body which do not mount up to a criminal offense. The custom and practice, hereinbefore referred to, of grand juries in this state, in their reports, commenting on or condemning general conditions which they believe to exist, and pointing out what in their judgment is the remedy, can do no harm, and in many cases substantial good to the community may

follow, for the reason that recommendations of the grand jury carry with them great weight in the mind of the public; but when they go beyond this, and condemn the acts and impugn the motives of public officials or private citizens, the law and sound public policy forbid. The report here under consideration exceeds the legitimate powers of the grand jury and is calculated to injure the reputation of the individuals named or inferentially included therein. It charges the commission of no crime, and its only effect can be to arraign certain public officials as having been guilty of real or fancied misconduct in the administration of their public duties. The court deleted certain portions of the report, but, in our opinion, those allowed to remain contain such imputations and inferences of misconduct on the part of individuals or public officials as a grand jury is not privileged to make.

It follows from the views herein expressed that the appellants were entitled to have the whole of the report of the special committee expunged from the record, and the court's order refusing to do this was error, and must be reversed.

> *Order reversed, and case remanded, that an order may be passed in conformity with this opinion, costs to be paid by the appellants.*