# IN RE: SPECIAL INVESTIGATION NO. 236

[No. 115, September Term, 1982.]

*Decided March 28, 1983.*

574

The cause was argued before SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ., and W. ALBERT MENCHINE, Associate Judge of the Court of Special Appeals (retired), specially assigned.

*Stefan D. Cassella, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General,* and *John-Claude Charbonneau, Assistant Attorney General,* on the brief, for appellant.

*David R. Addis,* with whom were *Dickstein, Shapiro & Morin* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

We shall here hold that the accountant-client privilege provided under Maryland Code (1974, 1980 Repl. Vol.) § 9-110, Courts and Judicial Proceedings Article, is not applicable to a subpoena issued by a grand jury.

Pursuant to various authorizations from the Governor of Maryland under Maryland Constitution Art. V, § 3 (a) (2), the Attorney General of Maryland for quite some time has been engaged in investigations pertaining to certain health care providers. In fact, he has set up what is known as the Medicaid Fraud Control Unit in his office. As a part of that investigation the Grand Jury of Baltimore City issued a subpoena duces tecum to an accountant to produce certain records. The accountant complied. Upon learning of this sub-poena the person to whom the records pertained filed a motion for return of privileged material in the Criminal

Court of Baltimore (now the Circuit Court for Baltimore City). This motion was granted. An appeal to the Court of Special Appeals followed. On our own motion we issued a writ of certiorari prior to consideration of the case by the latter court.

## I

We first address the issue of appealability. Appeals in Maryland are limited to final orders and certain interlocutory orders. An appellate court is without jurisdiction to entertain an appeal unless the order appealed from is a final order or is one of the class of interlocutory orders specified in Code (1974, 1980 Repl. Vol.) § 12-303, Courts and Judicial Proceedings Article.

Upon the strength of our recent case of *In Re: Special Investigation No. 231,* 295 Md. 366, 455 A.2d 442 (1983), we conclude that the order here was final. This is because the proceeding consisted only of a motion to return the privileged material. Once that motion was granted there was nothing more to be done in this particular case. It thus settled the rights of the parties and terminated the cause. *Cf. Peat & Co. v. Los Angeles Rams,* 284 Md. 86, 394 A.2d 801 (1978).

## II

The statute pertaining to the accountant-client privilege, § 9-110, Courts and Judicial Proceedings Article, states:

"(a) *Privilege.* — A certified public accountant, public accountant, or any person employed by him may not disclose the contents of any communication made to him by a person employing him to examine, audit, or report on any book, record, account, or statement nor may he disclose any information derived from the person or material in rendering professional service unless the person employing him or his personal representative or his successor in interest permits it expressly.

"(b) *Exception.* — This privilege does not affect the criminal laws of the State or the bankruptcy laws."

The Attorney General argues that the exception is applicable to the subpoena issued by the grand jury in this instance.

The principles of statutory construction have been stated many times by this Court. In *Police Comm'r v. Dowling,* 281 Md. 412, 418-19, 379 A.2d 1007 (1977), we set forth a number of those principles, citing cases for each. The ones applicable to this proceeding include: The cardinal rule of statutory construction is to ascertain and carry out the real legislative intent. In determining that intent the Court considers the language of an enactment in its natural and ordinary signification. A corollary to this rule is that if there is no ambiguity or obscurity in the language of a statute, there is usually no need to look elsewhere to ascertain the intent of the General Assembly. A court may not insert or omit words to make a statute express an intention not evidenced in its original form. The General Assembly is presumed to have had, and acted with respect to, full knowledge and information as to prior and existing law and legislation on the subject of the statute and the policy of the prior law. Absent a clear indication to the contrary, a statute, if reasonably possible, is to be read so that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless, or nugatory. *See also Board of Educ., Garrett Co. v. Lendo,* 295 Md. 55, 62-63, 453 A.2d 1185 (1982), and *Hurst v. V & M of Virginia,* 293 Md. 575, 578-79, 446 A.2d 55 (1982).

The statute here is ambiguous. Hence, we turn for a possible explanation of its meaning to its form as it existed prior to recodification in 1973. Recodification of statutes is presumed to be for the purpose of clarity rather than change of meaning. Thus, even a change in the phraseology of a statute by a codification will not ordinarily modify the law unless the change is so material that the intention of the General Assembly to modify the law appears unmistakably

from the language of the Code. See the discussion in *Hoffman v. Key Fed. Sav. & Loan,* 286 Md. 28, 37, 416 A.2d 1265 (1979), citing two of our prior cases to this effect.

The original accountant-client privilege was enacted by Ch. 585 of the Acts of 1924. Immediately prior to recodification into the Courts and Judicial Proceedings Article in 1973, Code (1957, 1969 Repl. Vol., 1972 Cum. Supp.) Art. 75A, § 21 read as follows:

> "Except by express permission of the person employing him, or of the heirs, personal representatives or successors of such person, a certified public accountant or public accountant or any person employed by him shall not be required to, and shall not voluntarily, disclose or divulge the contents of any communication made to him by any person employing him to examine, audit or report on any books, records, accounts or statements nor any information derived therefrom in rendering professional service; provided that nothing in this section shall be taken or construed as modifying, changing or affecting the criminal laws of this State or the bankruptcy laws."

The exception provision there appearing uses exactly the same language found in Code (1924) Art. 75A, § 11 at the time of the original enactment. Accordingly, we conclude that it was the intent of the General Assembly that this privilege was not to modify, affect or change the criminal laws of this State. In our view, this language would include a formal criminal proceeding. Thus, we turn to an examination of whether a grand jury proceeding is essentially criminal.

The key Maryland case is *In re Report of Grand Jury,* 152 Md. 616, 137 A. 370 (1927). There Judge W. Mitchell Digges set forth for the Court a concise summary of the development of the grand jury in England, concluding:

> "From [the forty-second year of Edward III] to the present, the grand jury has been continued and pre-

served as an institution necessary for the preservation of the peace, good order, and dignity of the state in bringing to trial those guilty of violations of law, and in protecting people from being put on trial upon frivolous, unfounded, or false accusations." 152 Md. at 621.

At issue in that case was the report of a special committee of the Grand Jury of Baltimore City which was critical of the supervising engineer of a high school construction project and the Public Improvement Commission of Baltimore City, among others. Those who were criticized sought to have the report stricken, claiming:

" '(a) The grand jury has no authority or power to return such presentments; (b) the grand jury had no power to authorize a special committee to return such presentments; (c) the charges (or presentments) contained in said report are not such upon which any indictment can be drawn; (d) the report violates your petitioners' rights under the Bill of Rights of the Constitution of the United States and the Declaration of Rights of the Constitution of Maryland, in that it undertakes to make charges (or presentments) and to condemn your petitioners without the privilege of a trial by jury, or any other trial, without being heard in their own defense, and without an opportunity to produce witnesses or other evidence in their behalf; [and] (e) the report (or presentment) in the manner made and published, is subversive of the principles of the government, and is opposed to every recognized rule of fairness and justice . . . .' " 152 Md. at 618-19.

In answering these contentions favorably to the movants the Court stated:

"At common law the function of the grand jury is confined to investigations of violations of the criminal law, and unless such investigations disclose facts which would constitute a recognized violation

of the criminal law, they have no power or authority to criticize any particular individual or number of individuals." 152 Md. at 623.

The Court noted that grand juries are directed by statute in this and some other states to inspect State correctional facilities and county jails. It also noted that it has been customary for grand juries to present other reports but the opinion in no way intimates that these special duties and customs have undermined or eroded the essential functions of the grand jury.

The only statewide statutory authority for Maryland grand juries to report on what might be called non-criminal matters is found in Code (1957, 1982 Repl. Vol.) Art. 27, §§ 703 and 703½. Section 703 requires grand juries "to inquire into the conduct and management of each of the State correctional institutions or correctional facilities within the jurisdiction of the court and to make presentments of all offenses and omissions of any person in or relating to said State correctional institutions or facilities." That provision has existed in some form since at least 1916. We note that even that statute refers to "presentments of all offenses . . . ." Section 703½ provides that each grand jury "shall at least once each calendar year visit the jail and inquire into its condition, the manner in which it is kept and the treatment of the prisoners, and report their findings to the court." A similar provision has existed since at least 1837. This "county jail" duty in Maryland was noted in S. Thompson and E. Merriam, *A Treatise on the Organization, Custody and Conduct of Juries,* § 473 (1882).

The only current local laws we have been able to locate imposing special duties upon grand juries are ones for Somerset County and Talbot County. Code of Public Local Laws (1977) Art. 20, § 54, provides that all county trea-surer's books, documents and papers in Somerset County shall at all times be subject to examination of the grand jury, among others. A like provision exists in Code of Public Local Laws (1977) Art. 21, § 6-3 relative to Talbot County's finance officer.

Other statutory provisions have been known, however. See, *e.g., Cahen v. Jarrett,* 42 Md. 571 (1875), pertaining to an act applicable to most of the counties of the State providing that licenses for the sale of spirituous or fermented liquors and the like should not be issued "unless such person or body politic shall have been recommended to said clerk [of the circuit court] by the Grand Jury, which shall have been in session at the Term next preceding the first day of May, in each and every year, in the county where the applicant for such license shall reside . . . ." Judge Alvey, in upholding this statute against constitutional attack, commented for the Court:

> "All license systems embody, more or less, restraints and conditions; and, in order that the subject be kept within proper control, and to avoid the abuse incident to an indiscriminate grant of licenses, it may be necessary that discretion be reposed in some one or a number of persons; and no body of individuals could be more appropriate for the exercise of such discretion, looking to the peace and good order of the community, than the Grand Jury. To them, as has been well said, is committed the preservation of the peace of the county, the care of bringing to light for examination, trial and punishment, all violence, outrage, indecency and terror; everything that may occasion danger, disturbance, or dismay to the citizens. They are watchmen stationed by the laws to survey the conduct of their fellow-citizens, and inquire where and by whom public authority has been violated, or the laws infringed." 42 Md. at 580.

In *Blaney v. State,* 74 Md. 153, 21 A. 547 (1891), Judge McSherry discussed for the Court the functions of the grand jury and its plenary inquisitorial powers. Emphasis was laid upon its duty to inquire into criminal violations.

R. Lee Benson prepared Research Report No. 32 for the Legislative Council in 1958 entitled *The Grand Jury.* That

report traces the historical background of the grand jury, the grand jury as it is operated in Maryland, its operation outside Maryland and certain suggestions relative to revision of the system. It refers to some of the reports which grand juries have filed by custom such as those on the condition of courthouses. Benson cites *In re Report of Grand Jury, supra,* for the proposition "that the power of the grand jury is plenary, but it is confined to investigations of violations of the criminal law." *The Grand Jury* at 21.

1 *Wharton's Criminal Procedure,* § 213 (12 ed. C. Torcia 1974), states:

> "Although the grand jury is ordinarily under a duty to inquire into such matters as 'the condition and management of the public prisons within the county' and 'the willful and corrupt misconduct in office of all county officers', its main function is the investigation of crimes allegedly committed in the county with a view to determining who should be charged therewith and held for trial." *Id.* at 464.

The author then goes on in § 215 to state:

> "Absent specific statutory authorization, a grand jury cannot act in civil matters. A grand jury, being only part of the government machinery for the detection and punishment of crime, cannot extend its inquisition beyond that pale into matters which are not in their nature criminal." *Id.* at 470.

38 C.J.S., *Grand Juries* § 34 b at 1030 (1943), concludes its discussion of the matters subject to investigation by grand juries by stating, "Ordinarily, . . . unless authorized by statute, it cannot extend its investigation to matters not of a criminal nature." To like effect see 38 Am. Jur. 2d, *Grand Jury,* § 29 (1968).

1 J. Bishop, *New Criminal Procedure* § 856 (4th ed. 1895) sets forth the oath of the foreman of the grand jury as in use in England at that time:

582

" 'Sir, you as foreman of this grand inquest for our sovereign lady the queen and the body of this county, shall diligently inquire, and true presentment make, of all such matters and things as shall be given to you in charge, or shall otherwise come to your knowledge, touching this present service; the queen's counsel, your fellows', and your own, you shall keep secret; you shall present no one through envy, hatred, or malice, neither shall you leave any· one unpresented through fear, favor, affection, gain, reward, or hope thereof, but you shall present all things truly and indifferently as they shall come to your knowledge, according to the best of your understanding. So help you God.' " *Id.* 493-94.

That oath compares with the typical oath of the foreman of the grand jury in one of the counties of Maryland:

"You, ___, do solemnly declare and affirm under the penalties of perjury that, as Foreman of the Grand Inquest of the State of Maryland for the body of ___ County, you will diligently inquire and true presentment make of all such matters and things as shall be given you in charge or shall otherwise come to your knowledge touching this present service. The counsel of the State of Maryland, your fellows and your own, you shall well and truly keep secret; you shall present no person for envy, hatred, malice nor ill will neither shall you leave anyone unpresented for love, fear, favor or affection, or for any hope or promise of reward, but you shall present all things truly as they come to your knowledge, according to the best of your understanding."

From the time of the enactment of Ch. 24, § 21 of the Acts of 1780 until 1945 each constable was required to "be sworn up at every circuit court for the county, or criminal court of Baltimore, to the grand jury...." See Code (1939) Art. 20, § 22. When this provision was repealed by Ch. 22 of the Acts

of 1945, the General Assembly went so far as to give a reason for its repeal, stating, "[I]t is not necessary to require constables to appear before Grand Juries at each term of Court, whether there is any need for such appearance, since the Grand Jury can at any time summon any constable before it . . . ." It no doubt was because of this provision that a typical grand jury report in an earlier era would state, "All of the Constables of the several Districts of the County reported that all violations brought to their attention have been given their best efforts."

The conclusion is inescapable that at common law the grand jury was concerned with matters criminal. The only change in that procedure in Maryland is the four statutes we have cited. Hence, it was as a part of a criminal proceeding that the subpoena duces tecum was here issued. The statutory protection afforded as between accountants and their clients is thus not applicable. It follows, therefore, that the trial judge erred when he ordered return of the subpoenaed documents to the client of the accountant.

*Order reversed; appellee to pay the costs.*